UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN D. MOTYKIE, KATHERINE D. TORBICK, and KATHERINE D. TORBICK, as natural mother and next friend of JT, a minor,<br><br>    Plaintiff,<br><br>v.<br><br>GARY MOTYKIE, M.D., JOSEPH G. HOWARD, LAW OFFICES OF JOSEPH HOWARD, P.C., OFFICER JOSEPH BELMONTE, OFFICER RANDY AKIN, OFFICER SCOTT MAY, OFFICER ERNIE MEYERSON and VILLAGE OF INVERNESS, ILLINOIS,<br><br>    Defendants. | Case No: 2023-cv-01779 |

**DEFENDANTS JOSEPH G. HOWARD AND THE LAW OFFICES OF JOSEPH HOWARD, P.C.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**

Defendants, JOSEPH G. HOWARD and LAW OFFICES OF JOSEPH HOWARD, P.C., (collectively, the "Howard Defendants"), by and through their undersigned counsel, hereby move pursuant to Fed. R. Civ. P. 12(b)(6) for entry of an order dismissing the Complaint of Plaintiffs, KEVIN D. MOTYKIE, KATHERINE D. TORBICK, and KATHERINE D. TORBICK, as natural mother and next friend of JT, a minor (collectively, "Plaintiffs"), with prejudice for failure to state a claim upon which relief can be granted. In support thereof, the Howard Defendants state as follows:

**INTRODUCTION**

On March 21, 2023, Plaintiffs instituted this action by filing a 126-paragraph, 10-count Complaint against 8 defendants. The lawsuit arises out of the entry of an emergency order of protection entered against Plaintiffs in underlying state court litigation, pursuant to which Plaintiffs were ordered to vacate their Illinois residence. The allegations against the Howard Defendants, who represented the plaintiff in the underlying litigation, are sparse as the Complaint, by and large, focuses its ire on Dr. Gary

1

Motykie and officers from the Village of Inverness. With respect to Defendants, Plaintiffs' claims focus exclusively on the fact that the Howard Defendants filed the underlying petition for emergency order of protection on Dr. Motykie's behalf and then took unspecified steps to enforce the order granting said petition.

Yet regardless of whether the petition for emergency order of protection included false information, as Plaintiffs assert, Plaintiffs' claims against the Howard Defendants are barred by the absolute attorney litigation privilege, which protects attorneys from civil suits arising out of actions taken and statements made in connection with litigation. Since the Howard Defendants' supposed misconduct arises directly out of their representation of Dr. Motykie in the underlying order of protection litigation, their acts and statements are protected as a matter of law.

Separately, the Complaint falls woefully short of alleging all the required elements of a conspiracy or abuse of process claim. For these reasons, dismissal is appropriate.

## BACKGROUND FACTS/ALLEGATIONS OF THE COMPLAINT

According to the Complaint, Defendant Joseph G. Howard ("Attorney Howard") filed a petition ("Petition") in the circuit court of Cook County on behalf of Defendant Gary Motykie, M.D. ("Dr. Motykie") seeking an emergency order of protection against Plaintiffs. [ECF No. 1, at ¶¶ 18, 117]. A copy of the Petition in *Dr. Gary Motykie v. Kevin Motykie*, Case No. 21-OP-31015 is attached hereto as **Exhibit A**.[1] Plaintiffs allege that Dr. Motykie's Petition was based on "false facts and false information." [*Id*. at ¶ 17].

The Petition was ultimately granted and an order of protection was entered granting Dr. Motykie exclusive possession of the residence located 1120 Glencrest Dr., Inverness, Illinois (the "Inverness Residence"). [*Id*. at ¶ 20]. A copy of the December 23, 2022 Emergency Order of Protection is attached

---

[1] "Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016).

2

hereto as **Exhibit B**.² On September 14, 2022, the parties ultimately entered into a settlement agreement with respect to the Petition. A copy of the settlement agreement, entered by the trial court, is attached as **Exhibit D**.

Plaintiffs further allege that Attorney Howard conspired with Dr. Motykie and various officers from the Village of Inverness to "unlawfully evict the Plaintiffs" pursuant to the order of protection granting Dr. Motykie exclusive possession of the Inverness Residence. [*Id*. at ¶ 99].

Based on these allegations, Plaintiffs make the following claims against Attorney Howard: (1) conspiracy (Count VIII); (2) violation of the covenant of quiet enjoyment (Count IX); and (3) abuse of process (Count X).

## LEGAL STANDARD FOR MOTION TO DISMISS

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, in ruling on a motion to dismiss, the court is not constrained by the legal characterizations placed upon the factual allegations made by the plaintiff. *See Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (plaintiff's conclusory assertion insufficient to overcome motion to dismiss); *Jones v. A-Alert Security Services, Inc.*, No. 15 C 3537, 2015 WL 9461296, at *5 (N.D. Ill. Dec. 28, 2015) ("[C]onclusions…without factual underpinnings, are insufficient to survive a motion to dismiss."). Furthermore, "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the

---

² Not explained in the Complaint is that Dr. Motykie's request for an emergency order of protection against Plaintiffs came via separate (but effectively identical) petitions filed on the same day. The order granting the emergency order of protection against Plaintiff Katherine Torbick is attached as **Exhibit C**.

3

elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.,* 803 F.3d 327, 334 (7th Cir. 2015) (quoting *Iqbal,* 556 U.S. at 678).

## ARGUMENT

### I. ABSOLUTE ATTORNEY LITIGATION PRIVILEGE BARS ALL CLAIMS AGAINST ATTORNEY HOWARD

The absolute attorney litigation privilege "derives from section 586 of the Restatement (Second) of Torts," which provides that, "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *See Scully v. Novack & Macey Ltd. liability partnership*, 2022 IL App (1st) 210319-U, ¶ 42 (quoting Restatement (Second) of Torts § 586 (1977)). The privilege "gives attorneys the utmost freedom in their efforts to secure justice for their clients" and "facilitates an attorney's need to fully and fearlessly communicate with clients and the free flow of truthful information to the courts." *Id*. (internal quotations and citations omitted).

"The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter." *Popp v. O'Neil*, 730 N.E.2d 506, 510 (Ill. App. Ct. 2000). "In essence, the absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litigation." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998).

"The only requirement is that the communication pertain to proposed or pending litigation." *Golden v. Mullen,* 693 N.E.2d 385, 390 (Ill. App. Ct. 1997). "The pertinency requirement is not applied strictly, and the communication need not be confined to specific issues involved in the litigation." *Libco Corp. v. Adams*, 426 N.E.2d 1130, 1132 (Ill. App. Ct. 1981) (internal citations omitted). Where pertinency is in question, "all doubts will be resolved in favor of a conclusion that the communication is pertinent or relevant." *Skopp v. First Federal Savings*, 545 N.E.2d 356, 361 (Ill. App. Ct. 1989).

Significantly, the absolute attorney litigation privilege is *not* limited to causes of action for defamation and is *not* limited to communications, as opposed to conduct. *See, e.g., Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, at ¶ 17 (absolute litigation privilege applies to bar negligent infliction of emotions distress claim and breach of contract claim). To hold otherwise "would undermine the policies behind the privilege." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 27 (affirming dismissal of intentional infliction of emotional distress and strict liability claims based on absolute attorney litigation privilege). Thus, "Illinois courts have consistently held that **_no action_** may be maintained upon any verbal or written statement made by an attorney during a legal proceeding that is pertinent to the matter in controversy." *Popp,* 313 Ill. App. 3d at 644 (emphasis added). Indeed, the absolute litigation privilege applies even to abuse of process claims. *See Gorman-Dahm v. BMO Harris Bank, N.A.*, 2018 IL App (2d) 170082, ¶ 29 (affirming dismissal of abuse of process and slander of title claims pursuant to absolute litigation privilege). Put simply, "[t]here is no civil cause of action for misconduct which occurred in prior litigation." *Harris Tr. & Sav. Bank v. Phillips*, 154 Ill. App. 3d 574, 585, 506 N.E.2d 1370, 1377 (Ill. App. Ct. 1987). "Were it otherwise, litigation would never end." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 28.

In this matter, Plaintiffs' three causes of action against Attorney Howard are premised on two factual allegations: (1) that Attorney Howard filed a petition for an emergency order of protection on behalf of Dr. Motykie that contained false information; and (2) that Attorney Howard conspired with Dr. Motykie and officers from the Village of Inverness in enforcing the trial court's order granting Dr. Motykie's petition for an emergency order of protection. [ECF No. 1 at ¶¶ 17, 99]. Because both allegations, even if true, relate directly to Attorney Howard's representation of Dr. Motykie in the underlying litigation, Plaintiffs' Complaint is barred by the absolute attorney litigation privilege. One cannot reasonably dispute that the Petition and Attorney Howard's (unspecified) statements with Village of Inverness officers about enforcement of the order granting said Petition "pertain[ed] to proposed or

5

pending litigation." *Golden,* 693 N.E.2d at 390. Furthermore, that Attorney Howard's supposed communications with law enforcement occurred outside of the courthouse does nothing to invalidate the absolute attorney litigation privilege. *See, e.g., O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26 (the absolute attorney litigation privilege "applies to out-of-court communications"); *Doe v. McCarthy*, 2017 IL App (2d) 160860, ¶ 20 (finding that attorney defendants' efforts to "obtain and enforce discovery are intimately related to litigation" and therefore subject to absolute litigation privilege). Any supposed statements with police officers for the purpose of arranging enforcement of the emergency order of protection would have clearly related to the pending litigation and been made in furtherance of Attorney Howard's client's interests.

The Illinois appellate court's ruling in *O'Callaghan* is instructive. There the plaintiffs sued a condominium association claiming that it failed to properly remedy a ceiling leak, causing toxic black mold to infiltrate their condominium. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 4. The suit against the association was ultimately dismissed with prejudice. *Id*. at ¶ 6. The plaintiffs then filed a separate suit against the association's attorneys, alleging intentional infliction of severe emotional distress and strict liability for ultrahazardous activity. *Id*. at ¶ 8. The complaint alleged that the association's counsel committed various wrongful acts in the underlying litigation, including directing vendors who were hired to remedy the plaintiffs' condominium to engage in acts that actually caused the toxic mold to spread. *Id*. at ¶ 8. The trial court dismissed the plaintiffs' suit, finding that the attorney defendants' alleged misconduct was protected by the absolute attorney litigation privilege. *Id*. at ¶ 12.

The appellate court affirmed, holding in pertinent part:

> The O'Callaghans now contend that those attorneys made the following improper communications and engaged in the following improper conduct: they engaged in discovery violations, failed to disclose evidence, concealed evidence, contrived a bad-faith defense, failed to properly participate in settlement and mediation, obtained a court order against the O'Callaghans, attempted to alter expert opinions, ordered workers to remove barriers intended to contain mold, lied to the Association regarding the underlying litigation, and undertook insufficient means to remedy the mold. These alleged improprieties clearly pertained to the role of Satherlie and Kopka as attorneys in the

underlying action and were done in furtherance of representing their clients. **In addition, Satherlie's alleged directions to the individuals remedying the condominium were not made to an outsider within the meaning of the privilege; rather, neither Satherlie nor the workers would have had reason to be in the O'Callaghans' condominium but for the mold, the subject of this litigation**…Furthermore, directly observing the subject of the dispute clearly furthered the Association's interest in limiting liability.

*Id*. at ¶ 29 (emphasis added). Here, Attorney Howard's supposed communications with law enforcement were made in accordance with the trial court's order requiring Plaintiffs to vacate the Inverness Residence. Indeed, Attorney Howard would have had no reason to speak with the officers but for the underlying litigation and the trial court's emergency order of protection.

Because all of Attorney Howard's supposed misconduct is protected by the absolute litigation privilege, Plaintiffs' Complaint against Attorney Howard must be dismissed with prejudice. *See Semmerling v. Bormann*, No. 18 CV 6640, 2019 U.S. Dist. LEXIS 233531, at *3 (N.D. Ill. Sep. 11, 2019) (granting motion to dismiss based on Illinois' absolute litigation privilege); *Mouloki v. Epee*, No. 14 C 5532, 2016 U.S. Dist. LEXIS 31069, at *12 (N.D. Ill. Mar. 10, 2016) (same); *NSB Technologies, Inc. v. Specialty Direct Marketing*, No. 03 C 2323, 2004 U.S. Dist. LEXIS 16830, at **12-13 (N.D. Ill. Aug. 17, 2004) (granting motion to dismiss based on federal common law privilege which borrowed from Illinois' absolute litigation privilege).

## II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE A CONSPIRACY

Even if the Court were to find that the absolute attorney litigation privilege does not apply, Count VIII of the Complaint must still be dismissed as it falls woefully short of pleading a conspiracy claim. "To state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). While "a plaintiff is not required to plead with specificity and precision the facts that are within the defendant's control and knowledge," a "complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Time Savers,*

7

*Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1167 (Ill. App. Ct. 2007) (quoting *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004).

Plaintiffs' conspiracy claim fails for two reasons. First, Count VIII does not mention a single specific fact about Attorney Howard's supposed participation in the conspiracy. Instead, the Complaint simply states in conclusory fashion that Attorney Howard and other co-defendants "entered into an agreement to unlawfully evict the Plaintiffs, deprive them of their rights to due process, deprive them of equal protections under the law, deprive them of their home, deprive them of their personal property and personal belongings, and intentionally infliction emotional distress." [ECF No. 1 at ¶ 99]. Such "threadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Def. Sec. Co. v. First Mercury Ins. Co.,* 803 F.3d 327, 334 (7th Cir. 2015) (quoting *Iqbal,* 556 U.S. at 678).

Second, Plaintiffs' conspiracy count requires an allegation that one of the conspirators made an overt act that was "tortious or unlawful in character." *Adcock.*, 645 N.E.2d at 894. Count VIII, however, fails to allege how enforcing or assisting in the enforcement of a lawfully entered court order requiring Plaintiffs to vacate the Inverness Premises was unlawful or tortious. *See, e.g., City of Chicago v. Office of the Special Prosecutor (In re Special Prosecutor)*, 2017 IL App (1st) 161376, ¶ 46 (party's compliance with a lawful court order does not constitute violation of FOIA obligations).

Indeed, the law is clear that officers, such as the ones Attorney Howard supposedly conspired with in enforcing the emergency order of protection, "charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Valdez v. Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989). Otherwise, "[i]f losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties." *Id*. at 1288; *see also Dunn v. City of Elgin*, 347 F.3d 641, 647 (7th Cir. 2003) ("Because judges are not liable for their decisions, it is

8

only reasonable to also immunize those acting pursuant to an official court order or who are enforcing a validly entered judgment.") (internal quotations omitted).

That Plaintiffs disagree with the court's emergency order does not render its enforcement unlawful. To the extent Plaintiffs dispute the order of protection, Plaintiffs' recourse was to file a motion or appeal seeking to vacate or reverse it. *See, e.g., Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986) ("The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution.").

Because Plaintiffs fail to allege any tortious or unlawful act, Count VIII must be dismissed.

### III. PLAINTIFFS FAIL TO ALLEGE ELEMENTS OF ABUSE OF PROCESS

To bring a claim for abuse of process, the plaintiff must plead "(1) the existence of an ulterior purpose or motive for the use of regular court process, and (2) an act in the use of process not proper in the regular prosecution of a suit." *McGrew v. Heinold Commodities, Inc.*, 497 N.E.2d 424 (Ill. App. Ct. 1986). Both elements "are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). Here, Count X fails to satisfy either element of an abuse of process claim.

In order to satisfy the first element of an abuse of process claim, "a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment." *Id.* In *Forza Technologies, LLC v. Premier Research Labs, LP*, 2015 IL App (1st) 142640-U, ¶¶ 17-18, the plaintiff filed an abuse of process claim alleging that the defendants, in underlying litigation, had issued so many duplicative and unnecessary subpoenas that they must have been designed to "destroy [plaintiff] and its business." Affirming dismissal of the plaintiff's claim, the Illinois appellate court held that, "[e]ven taken as true, none of these claims alone reveal an actionable ulterior motive." *Id.* at ¶ 18. Here, the Complaint utterly fails to mention what supposed

9

ulterior motive or improper purpose Attorney Howard had in filing the Petition. Count X is, therefore, even weaker than the abuse of process claim in *Forza*, which was insufficient to withstand dismissal at the pleading stage.

In order to satisfy the second element of an abuse of process claim, a "plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Kumar*, 820 N.E.2d at 1173. "It is the settled law of Illinois that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process." *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill. App. Ct. 1972). "Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." *Bonney v. King*, 66 N.E. 377, 378 (Ill. 1903). Thus, "[t]o show abuse of process, the defendant must have intended to use the action to accomplish some result the suit itself could not accomplish." *Forza*, 2015 IL App (1st) 142640-U, ¶ 18.

The case of *Erlich v. Lopin-Erlich*, 553 N.E.2d 21, 22 (Ill. App. Ct. 1990) is instructive. There, a husband filed suit for abuse of process against his wife and her attorney arising out of supposed misconduct in the couple's underlying divorce proceeding. The husband alleged that the defendants filed an *ex parte* petition for a temporary restraining order in the divorce action that was based on clearly false information and sought to block the husband from disposing of marital assets. *Id*. at 22. The husband further alleged that the petition, which was granted by the trial court, "was sought not for the purpose of preserving marital property, but, rather, for the ulterior purpose of wreaking havoc with the plaintiff's ordinary business affairs and damaging the plaintiff's reputation for financial integrity." *Id*. at 22.

In affirming the dismissal of the husband's claim, the appellate court ruled that the husband had failed to satisfy the second element of an abuse of process action:

> In a marriage dissolution proceeding, it is proper to prevent one spouse from secreting or disposing of marital assets. The use of the process, *i.e.*, obtaining a TRO, is not extraneous to the purpose of the proceeding and was the proper subject of a TRO. Thus, the seeking and obtaining of a TRO was done in the regular prosecution of the proceeding. The fact that the representations

10

made to the court were allegedly false does not alter our holding. (See <u>Olsen v. Karwoski (1979), 68 Ill. App. 3d 1031, 1038-39, 386 N.E.2d 444, 451</u> (court found no abuse of process action where plaintiff alleged certain psychiatrists filed false affidavits to expedite plaintiff's involuntary commitment to a mental hospital).) The trial court properly dismissed the complaint for abuse of process.

*Id*.

The *Erlich* holding is dispositive here. As even the Complaint acknowledges, Illinois has a statute which governs the issuance of orders of protection and specifically allows a trial court to grant a petitioner exclusive possession of "any residence, household, or premises of the petitioner." 750 ILCS 60/214(b)(2). In fact, the Petition filed by Attorney Howard on Dr. Motykie's behalf is a form petition "approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts." *See* Ex. A, Petition. Similarly, the emergency order of protection upon which Plaintiffs base their abuse of process claim is a form order "approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts." *See* Ex. B, Emergency Order of Protection. The form order includes a section specifically requiring a respondent to vacate certain premises. *Id*.

Just as obtaining a temporary restraining order to prevent one spouse from disposing of marital assets is "done in the regular prosecution of" a divorce proceeding, filing a petition for order of protection pursuant to Illinois statute is "done in the regular prosecution of" an order of protection proceeding. That Plaintiffs believe the order of protection was based on false information "does not alter" this analysis. *Erlich*, 553 N.E.2d at 22. Simply put, because one of the primary purposes of an order of protection petition is to block a respondent from entering or remaining on certain property, Plaintiffs have not alleged and cannot allege that Attorney Howard's used process "to accomplish some end which is beyond the purview of the process[.]" *Cartwright v. Wexler, Wexler & Heller, Ltd.*, 369 N.E.2d 185, 188 (Ill. App. Ct. 1977).

11

### IV. THE COMPLAINT IS DEVOID OF ANY ALLEGATIONS AGAINST THE LAW OFFICES OF JOSEPH HOWARD, P.C.

The Law Offices of Joseph Howard, P.C. is named as a defendant in the case caption of Plaintiffs' Complaint. That is the only reference to this defendant in the entire 35-page Complaint. On this basis alone, the Complaint must be dismissed as against the Law Offices of Joseph Howard, P.C. To the extent Plaintiffs may assert that all causes of action against Attorney Howard apply to the Law Offices of Joseph Howard, P.C. under a *respondeat superior* theory, the arguments raised in Sections I-III, *supra*, apply equally to the Law Offices of Joseph Howard, P.C.

### CONCLUSION

For all of these reasons, Defendants, JOSEPH G. HOWARD and LAW OFFICES OF JOSEPH HOWARD, P.C., respectfully request that this Honorable Court enter an order dismissing Plaintiffs' Complaint with prejudice and granting any other relief this Court deems just and proper.

Dated: May 10, 2023

Respectfully submitted,

JOSEPH G. HOWARD and LAW OFFICES OF JOSEPH HOWARD, P.C.

Joseph R. Marconi, ARDC #1760173
Ramses Jalalpour, ARDC #6313128
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)
marconij@jbltd.com
jalalpourr@jbltd.com

By: /s/ *Ramses Jalalpour*
      One of Their Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2023, a true and correct copy of the foregoing document was served on all counsel of record via CM/ECF.

*/s/ Ramses Jalalpour*