**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN D. MOTYKIE, KATHERINE D. TORBICK, and KATHERINE D. TORBICK, as natural mother and next friend of JT, a minor, | ) | Case No. 1:23-cv-01779 |
| Plaintiffs, | ) | |
| vs. | ) | Judge Matthew F. Kennelly |
| GARY MOTYKIE, M.D., JOSEPH G. HOWARD, LAW OFFICES OF JOSEPH HOWARD, P.C., OFFICER JOSEPH BELMONTE, OFFICER RANDY AKIN, OFFICER SCOTT MAY, OFFICER ERNIE MEYERSON and VILLAGE OF INVERNESS, ILLINOIS, | ) | Mag. Judge Maria Valdez |
| Defendants. | ) | |

**DEFENDANT GARY MOTYKIE, M.D.'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Gary Motykie, M.D. ("Dr. Motykie"), by his attorneys, Valentine Austriaco & Bueschel, P.C., files this memorandum in support of his motion to dismiss all counts of the Complaint filed by Plaintiffs Kevin D. Motykie ("Kevin"), Katherine D. Torbick ("Torbick"), and Katherine D. Torbick, as natural mother and next friend of JT, a minor ("JT") (collectively, Kevin, Torbick, and JT are referred to as "Plaintiffs'") directed at Dr. Motykie.

## INTRODUCTION

Plaintiffs filed this federal lawsuit against Dr. Motykie – which includes claims that are identical to those that were previously rejected in Illinois state court – along with Section 1983 claims against Dr. Motykie, a private actor who cannot be held liable under that statute for illegal search and seizure or the denial of due process. Because this is Plaintiffs' second bite at the apple

and these claims fare no better than their first unsuccessful attempt, all Plaintiffs' claims against Dr. Motykie should be dismissed with prejudice.

## FACTUAL BACKGROUND

On December 23, 2021, Dr. Motykie appeared in person before Judge Joel L. Greenblatt of the Circuit Court of Cook County, Illinois, in Case No. 21-OP-31015 (the "Order of Protection Proceedings") and presented evidence in support of his Petitions for Orders of Protection against Kevin and Torbick. The evidence included Dr. Motokie's testimony that Kevin and Torbick had threatened bodily harm to Dr. Motykie and to employees of his business, Motykie Med Spa of Illinois, S.C. ("Motykie Med Spa"), including that Kevin intended to "hunt [Dr. Motykie] down and break all his fingers." (Doc. No. 1, Compl. ¶ 18; Exhibit A, Pet. For Order of Protection, Aff. in Support, ¶ 33.[1]) On the same date, Judge Greenblatt entered Emergency Orders of Protection (collectively, the "EOPs") against Kevin and Torbick. (*See* Emergency Orders of Protection, true and correct copies of which are attached hereto as Exhibit B (Kevin) and Exhibit C (Torbick).) As part of the EOPs, the Court granted Dr. Motykie exclusive possession of the residential property he owns at 1120 Glencrest Drive, Inverness, IL 60010 (the "Inverness Property"), and ordered Kevin and Torbick not to communicate with Dr. Motykie or to come within 500 feet of him or his business. *Id.* After several failed attempts to gain access to the Inverness Property, the Inverness Police Department successfully removed Kevin and Torbick on January 8, 2022, pursuant to the EOPs. (Doc. No. 1, Compl. ¶ 20.)

Kevin and Torbick claim that they have personal possessions in the Inverness Property; however, they do not specify which items are missing from the master list they purportedly

[1] This Court can take judicial notice of state court pleadings without converting a Rule 12(b)(6) motion into a summary judgment motion. *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

prepared. (Doc. No. 1, Compl. ¶ 31.)[2] By their own allegations, Kevin and Torbick admit that they were able to retrieve items on January 8, 2022, again on January 30, 2022, and a third time on May 10, 2022. (Doc. No. 1, Compl. ¶¶ 24-40.) Kevin and Torbick's allegations further acknowledge that on three occasions Dr. Motykie had property delivered to Kevin's residence in Schaumburg. *Id.*

Moreover, on September 14, 2022, Kevin and Torbick entered into settlement agreements with Dr. Motykie relating to the EOPs, pursuant to which they agreed that Dr. Motykie was to have exclusive possession of the Inverness Property and they were not to stay or be at the residence at any time. (*See* Order of Protection Settlement Agreements, true and correct copies of which are attached hereto as Exhibit E (Kevin) and Exhibit F (Torbick) ¶ 2.b.)

Soon after the entry of the EOP, on January 31, 2022, Dr. Motykie filed an action against Kevin in the Chancery Division of the Circuit Court of Cook County, Illinois, Case No. 2022 CH 00848, seeking to recover hundreds of thousands of dollars embezzled from Motykie Med Spa, and vintage vehicles that Kevin misappropriated from Dr. Motykie. This case is currently pending and assigned to Cook County Circuit Court Judge Alison C. Conlon ("the Chancery Proceeding"). On October 11, 2022, Kevin, Torbick, JT, and Christopher Bono ("Bono," a non-party to this action) filed what they called a "Complaint" in the Chancery Proceeding against them, purporting to state counterclaims against Dr. Motykie for violation of the Illinois Forcible Entry and Detainer Act, conversion, trespass, violation of the covenant of quiet enjoyment, and intentional infliction of severe emotional distress.[3] (*See* Exhibit D, Plaintiffs' State Court "Complaint.") On January 12, 2023, Judge Conlon granted Dr. Motykie's motion pursuant to 735 ILCS 5/2-615 to dismiss

---

[2] Plaintiffs state in Paragraph 31 that their "list" is attached to their federal complaint as Exhibit A, but there are no exhibits attached to the complaint. Presumably, Plaintiffs are referring to the list they attached as Exhibit F to their duplicative state court claims. (*See* Exhibit D, Pls.' State Court "Complaint.")

[3] In other words, the same claims Plaintiffs bring in this proceeding as Counts V, VI, VII, and IX.

for failure to state a claim and dismissed all of Kevin's counterclaims with leave to amend by February 1, 2023. (*See* Exhibit G, Order dated Jan. 12, 2023.)[4] Kevin allowed February 1, 2023, to come and go and did not refile his claims or seek additional time in the Chancery Proceeding. Instead, apparently hoping for a better result before a different judge, Plaintiffs filed this action on March 21, 2023.

## ARGUMENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) attacks the legal sufficiency of a plaintiff's complaint by alleging defects appearing on its face. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi.*, 933 Ff.3d 849, 854 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs*., 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### I. THE ABSOLUTE LITIGATION PRIVILEGE BARS ALL BUT ONE OF PLAINTIFFS' ILLINOIS STATE LAW CLAIMS AGAINST DR. MOTYKIE (COUNTS V, VII, VIII, IX, AND X).

Plaintiffs' Illinois state law claims arise out of communications and conduct relating to the EOP proceedings and are therefore barred by the absolute litigation privilege, which bars claims arising out of any communications made before, during, or after litigation. *Bedin v. Northwestern Mem. Hosp.*, 2021 IL App (1st) 190723, ¶ 39, *citing O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 26. The privilege extends beyond attorneys to protect the parties to the litigation and applies "regardless of the defendant's motive or the unreasonableness of his conduct." *Johnson v.*

[4] Torbick and JT's claims shared the same flaws but were dismissed because Torbick and JT were non-parties to the action and demonstrated no procedural basis to assert claims in the action.

*Johnson & Bell*, 2014 IL App (1st) 122677, ¶ 15. If there is any doubt as to whether the communications relate to the proceeding, that doubt should be resolved in favor of the application of the privilege. *Semmerling v. Bormann*, Case No. 18 CV 6640, 2019 U.S. Dist. LEXIS 233531, at *4; 2019 WL 10375623 (N.D. Ill. Sept. 11, 2019), *aff'd* 840 Fed. Appx. 869 (7th Cir. 2021), *citing Skopp v. First Federal Savings of Wilmette*, 189 Ill. App. 3d 440, 447-48, (1st Dist. 1989). *See also Scarpelli v. McDermott, Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 20 ("although the privilege began as merely protection for an attorney from defamation claims by his client regarding communications pursuant to the Restatement (Second), it has been extended widely to other arenas and situations, including who receives the communication and when it is made").

Illinois courts and federal courts applying Illinois law have consistently held that the absolute litigation privilege bars all but one of the state law claims at issue here. *Bedin*, 2021 IL App (1st) 190723, ¶ 39 (affirming dismissal of IIED claim against hospital attorney and physicians because all alleged wrongdoing arose before, during, and after guardianship proceedings); *Scarpelli*, 2018 IL App (1st) 170874, ¶ 27 (dismissing intrusion upon seclusion claim with prejudice because "all the alleged improper communications and conduct revolved around the subject of the litigation"); *Sharif v. Fox*, Case No. 21 C 3500, 2022 U.S. Dist. LEXIS 185045, at *16 (N.D. Ill. Oct. 11, 2022) (affirming bankruptcy court's dismissal of all claims against attorney – including a conspiracy claim – because they were barred by the absolute litigation privilege); *Gorman-Dahm v. BMO Harris Bank, N.A.*, 2018 IL App (2d) 170082, ¶ 19 (affirming on alternative grounds trial court's dismissal of abuse of process claim based on application of absolute litigation privilege).[5]

---

[5] Illinois courts have not extended the absolute litigation privilege to claims of conversion, but as explained in Section I.C. below, the conversion claim should be dismissed with prejudice because it is inadequately pleaded.

Here, Plaintiffs' claims against Dr. Motykie of IIED (Count V), wrongful eviction/trespass (Count VII), conspiracy (Count VIII), breach of the covenant of quiet enjoyment (Count IX), and abuse of process (Count X) are barred by the absolute litigation privilege because all of Dr. Motykie's allegedly improper communications and conduct revolved around the subject matter of the EOP proceedings, specifically, the actions he allegedly took in connection with obtaining possession of and removing Plaintiffs from the Inverness Property. These claims should be dismissed with prejudice because amendment would be futile given the scope of the privilege.

## II. COUNTS V, VI, VII, AND IX ARE NOT WELL PLEADED AND SHOULD BE DISMISSED, JUST AS THEY WERE IN THE CHANCERY PROCEEDING.

Even if Plaintiffs' claims against Dr. Motykie for violation of the Illinois Forcible Entry and Detainer Act, trespass, violation of the covenant of quiet enjoyment, and intentional infliction of severe emotional distress were not barred by the absolute litigation privilege, their Illinois state law claims were properly dismissed in the Chancery Proceedings for failure to state a claim. They should be dismissed here with prejudice because Plaintiffs should not be given a third bite at the apple.

### A. Counts VII and IX are collateral attacks on the Emergency Orders of Protection; accordingly, they must be dismissed.

Count VII, which claims to assert violations of the Illinois Forcible Detainer and Eviction Act, now known as the Eviction Act (the "Eviction Act") and Trespass, and Count IX, which claims to be a violation of Covenant of Quiet Enjoyment, are attempted collateral attacks on the EOPs entered by Judge Greenblatt. "Error, however egregious, cannot be raised in a collateral proceeding." *Lady v. Montgomery Ward & Co.*, 80 Ill. App. 3d 69, 73 (4th Dist. 1980) (*citing People ex rel. McAllister v. East*, 409 Ill. 379 (1951) and *La Salle Nat'l Bank v. Cty Bd. of School Trs.*, 61 Ill. 2d 524 (1975)).

If Kevin and Torbick believed that the EOPs were wrongly entered and that their right to

remain in the Inverness Property somehow survived the EOPs, they should have litigated that matter in the Order of Protection Proceedings before Judge Greenblatt. Kevin and Torbick did not do so, instead conceding the propriety of the EOPs by agreeing to settle the Order of Protection Proceedings. *See* Order of Protection Settlement Agreements, Exhibit C (Kevin) and Exhibit D (Torbick).

**B. The Court should dismiss Plaintiffs' intentional infliction of emotional distress claim (Count V) because their conclusory allegations do not allege "extreme and outrageous" conduct.**

Plaintiffs' intentional infliction of emotional distress (IIED) claim against Dr. Motykie (Count V) should be dismissed – just as it was in the Chancery Proceeding – because Plaintiffs fail to allege extreme and outrageous conduct, an essential element of their claim. To state an IIED claim, a plaintiff must allege: (1) conduct by defendant which is truly outrageous; (2) that defendant intended that its conduct would cause plaintiff severe emotional distress or knew there was a high probability of such a result; and (3) that defendant's actions actually did cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-03 (7th Cir. 1993).

Illinois law sets a high bar for extreme and outrageous conduct. "[M]ere insults, indignities, threats, annoyances, petty oppressions or trivialities" do not constitute extreme and outrageous conduct. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89-90 (1976). Instead, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 51, 412 Ill. Dec. 882, 77 N.E.3d 50. *See also Public Finance Corp. v. Davis*, 66 Ill.2d 85, 92 (1976) (holding that an agent for the plaintiff's creditor did not act in an extreme and outrageous manner by repeatedly calling the plaintiff and coming to her home); *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483 ¶ 29 (holding that employer's transfer of plaintiff causing a long commute, difficult working conditions, long hours, and uncooperative

colleagues and bosses was not extreme or outrageous); *Khan v. American Airlines*, 266 Ill. App. 3d 726, 733 (1st Dist. 1994) (holding that an airline's and security agents' entrapment of the plaintiff and keeping him from his father's funeral did not go beyond all possible bounds of decency).

Here, Plaintiffs' allegations that Dr. Motykie acted wrongfully in obtaining a court order and seeking enforcement of that order (Doc. No. 1, Compl., ¶¶ 74-79) do not rise to the level of extreme and outrageous conduct and their IIED claim should be dismissed with prejudice.

**C. Count VI fails to identify the property that was allegedly converted and must be dismissed.**

Because Kevin, Torbick, and JT fail to identify the personal property they claim was converted, Dr. Motykie is not able to respond to their allegations and the claim should be dismissed. To state a claim for conversion, a plaintiff must allege "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personally; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 14.

Kevin, Torbick, and JT allege the Plaintiffs "still have not received 80% of their property back from" Dr. Motykie. (Doc. No. 1, Compl., ¶ 48.) Although the Complaint identifies two return visits to the Inverness Property on January 30, 2022, and on May 10, 2022, as well as three deliveries from the Inverness Property to Kevin's current address on March 21, 2022, March 23, 2022, and April 29, 2022 (*see* Doc. No. 1, ¶¶ 24-40), Plaintiffs fail to identify which items comprise the allegedly missing 80% of their belongings. Without identifying the property that they claim is being wrongfully withheld and without a demand for its return, Plaintiffs have failed to state a

claim for conversion. Accordingly, Count VI should be dismissed with prejudice based on Plaintiffs' repeated failure to properly plead this claim.

**D. Count VII should be dismissed because there is no private right of action under the Illinois Eviction Act.**

In addition to the fact that Count VII is nothing more than an attempt to relitigate matters resolved and agreed to in the settlement agreements entered in the Order of Protection Proceedings, the Eviction Act does not provide a private right of action for Kevin, Torbick, or JT for alleged violations of its provisions. 735 ILCS 5/9-101 *et seq*. A claim under the Eviction Act "is a summary statutory proceeding to adjudicate possession rights . . . ." *Sawyier v. Young*, 198 Ill.App.3d 1047, 1053 (1st Dist. 1990) ("Where a claim seeks damages and not possession, it is not germane to the distinct purposes of the forcible entry and detainer proceeding."); *see also Am. Nat'l Bank by Metroplex, Inc. v. Powell*, 293 Ill.App.3d 1033, 1044 (1st Dist. 1997) ("A forcible entry and detainer action is a limited proceeding, focusing on the central issue of possession."); *see generally Menagh v. Hill*, 12 Ill.App.2d 80, 82 (1st Dist. 1956) ("Since forcible entry and detainer is a statutory proceeding in derogation of the common law, a court entertaining such an action will be considered as a court of special and limited jurisdiction, and the procedure prescribed by the statute must be strictly followed.").

Because a claim brought pursuant to the Eviction Act is a summary proceeding, "the litigation is limited to the issue of who is entitled to possession of the property." *Cont'l Ill. Nat'l Bank & Trust Co. v. Wilson*, 103 Ill.App.3d 357, 360 (2d Dist. 1982); *see also* 735 ILCS 5/9-102(a) (detailing when an action pursuant to the Eviction Act may be maintained). Tellingly, here Kevin and Torbick do not seek possession of either the Inverness Property or the Med Spa Apartment but seek only money damages against Plaintiffs. (Doc. No. 1, Compl. ¶¶ 89-97.) This type of action is squarely outside the statutory proceedings of the Eviction Act.

## III. THE COURT SHOULD DISMISS THE SECTION 1983 CLAIMS AGAINST DR. MOTYKIE BECAUSE PLAINTIFFS DO NOT ALLEGE THAT HE IS A STATE ACTOR OR THAT HE CAUSED A CONSTITUTIONAL DEPRIVATION.

Plaintiffs fail to state Section 1983 claims against Dr. Motykie based on illegal search and seizure (Count I) and denial of due process (Count II) because he is not alleged to have deprived Plaintiffs of specific civil rights while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

As a threshold matter, Plaintiffs' claims against Dr. Motykie fail because they do not allege in either Count I or Count II that Dr. Motykie engaged in any of the behavior that allegedly deprived Plaintiffs of their constitutional rights. Count I and Count II allege only that the Inverness police officer defendants engaged in the behavior that violated Section 1983 and make no mention of Dr. Motykie engaging in any such conduct. (*See*, Doc. No. 1, Compl. ¶¶ 52-59 and 61-66, referring only to the conduct of Defendant Officers Belmonte, Akin, May, and Meyerson when describing the acts that allegedly deprived Plaintiffs of their constitutional rights.) For this reason alone, their claims should be dismissed.

Even if Plaintiffs had pleaded that Dr. Motykie deprived them of constitutional rights, their claims would still fail because they do not allege that Dr. Motykie was a state actor. Ordinarily, private individuals such as Dr. Motykie cannot be held liable under Section 1983. *Gomez v. Garda Cl. Great Lakes, Inc.*, No. 13 C 1002, 2013 U.S. Dist. LEXIS 119785, 2013 WL 4506938 (N.D. Ill. Aug. 23, 2013), citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000). Plaintiffs fail to adequately plead any of the exceptions to this rule and as a result, their claims fail.

## IV. PLAINTIFFS' STATE LAW CONSPIRACY CLAIM MUST BE DISMISSED BECAUSE THEY DO NOT ALLEGE AN AGREEMENT TO COMMIT A TORTIOUS ACT.

As set forth above, Plaintiffs' conspiracy claim is barred by the absolute litigation privilege. But even if Plaintiffs were not barred from pursuing the claim, the Court should dismiss the civil conspiracy claim with prejudice because Plaintiffs rely only on conclusory allegations, which are inadequate to state a civil conspiracy claim. In order to state a claim of civil conspiracy under Illinois state law, a plaintiff must allege "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). The plaintiff must allege not only an agreement but also a tortious or unlawful act committed in furtherance of that agreement. *Id.* at 63. Conclusory allegations of an agreement to accomplish an unlawful purpose or to use unlawful means will not suffice under federal pleading standards. *Computron Display Sys. v. Medstone Int'l, Inc.*, Case No. 03 C 9307, 2004 U.S. Dist. LEXIS 23165, at *14, 2004 WL 2584761.

Here, Plaintiffs make only the conclusory allegation that "on information and belief," Dr. Motykie must have spoken to the Inverness police officer defendants about his desire to gain possession of the Inverness Property and the Plaintiffs' personal belongings, and the police officers must have known that the court order did not give Dr. Motykie the rights it provided on its face. (Doc. No. 1, Compl. ¶¶ 99-106.) In addition to being counter-factual – given that the Emergency Order of Protection gave Dr. Motykie exclusive possession of the Inverness Property – these allegations are conclusory and insufficient to state a civil conspiracy claim. The claim should be dismissed.

## V. PLAINTIFFS FAIL TO STATE AN ABUSE OF PROCESS CLAIM BECAUSE THEY DO NOT ALLEGE AN ACT THAT IS NOT A LEGITIMATE USE OF PROCESS.

Even if Plaintiffs' abuse of process claim was not barred by the absolute litigation privilege, it should be dismissed because Plaintiffs fail to state a claim. In order to state a claim for abuse of process under Illinois law, a plaintiff must allege both an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. *Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539 (1st Dist. 1990) (citations omitted). Moreover, actions for abuse of process are not favored. *Id.*

In *Erlich*, a husband sued his wife and her attorney for abuse of process because they sought a TRO during divorce proceedings to prevent him from disposing of marital assets. The *Erlich* court held that the husband failed to state a claim for abuse of process because a TRO was not extraneous to the purpose of marital dissolution proceedings – even if representations made to the court to obtain the TRO were allegedly false. *Id. See also Kumar v. Bornstein*, 354 Ill. App. 3d 159, 170, 820 N.E.2d 1167, 1177 (2nd Dist. 2004) (affirming dismissal of abuse of process claim because obtaining writ of attachment and arrest warrants to obtain compliance with discovery orders were not extraneous to the suit and there was no allegation of an ulterior purpose to obtain some collateral thing from the plaintiff).

Here, as in *Erlich*, Plaintiffs' abuse of process claims fail because an order of protection granting possession of premises to exclude persons who engage in physical abuse is one of the proper functions of the proceeding: indeed, there is a place on the standard form where the Court can award exclusive possession of real property. (*See* Emergency Orders of Protection, true and correct copies of which are attached hereto as Exhibit B (Kevin) and Exhibit C (Torbick).)

Because Plaintiffs allege no "abuse" of the EOP process, Plaintiffs' abuse of process claims should be dismissed.[6]

**CONCLUSION**

For the reasons set forth herein and in his motion, Dr. Motykie respectfully requests that this Court dismiss with prejudice all counts of Plaintiffs' Complaint at Law directed against Dr. Motykie (Counts I, II, V, VI, VII, VIII, IX, and X) and grant any and all other such relief as it deems just.

Respectfully submitted,

**GARY MOTYKIE, M.D.**

By: /s/ Sandy L. Morris
One of His Attorneys

Lydia A. Bueschel (6274638)
Sandy L. Morris (6270309)
VALENTINE AUSTRIACO & BUESCHEL, P.C.
300 East Randolph Street, Suite 3400
Chicago, Illinois 60601
T: (312) 238-9545
F: (312) 638-8137
lbueschel@vablawfirm.com
smorris@vablawfirm.com
*Attorneys for Defendant Gary Motykie, M.D.*

[6] Even if Kevin and Torbick stated an abuse of process claim against Dr. Motykie, JT's claim would still be subject to dismissal because Dr. Motykie did not initiate any judicial process against JT.

**CERTIFICATE OF SERVICE**

I, Sandy L. Morris, hereby certify that the foregoing **Defendant Gary Motykie, M.D.'s Memorandum in Support of His Motion to Dismiss** was electronically filed on May 10, 2023, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

/s/ *Sandy L. Morris*
Sandy L. Morris