IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN D. MOTYKIE, KATHERINE D. TORBICK, and KATHERINE D. TORBICK, as natural mother and next friend of JT, a minor,<br><br>    Plaintiffs,<br><br>vs.<br><br>GARY MOTYKIE, M.D., JOSEPH G. HOWARD, LAW OFFICES OF JOSEPH HOWARD, P.C., OFFICER JOSEPH BELMONTE, OFFICER RANDY AKIN, OFFICER SCOTT MAY, OFFICER ERNIE MEYERSON and VILLAGE OF INVERNESS, ILLINOIS,<br><br>    Defendants. | Case No. 1:23-cv-01779<br><br>Judge Jeremy C. Daniel<br><br>Mag. Judge Maria Valdez |

**DEFENDANT GARY MOTYKIE, M.D.'S**
**REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

    Defendant Gary Motykie, M.D. ("Dr. Motykie"), by his attorneys, Valentine Austriaco & Bueschel, P.C., files this reply memorandum in support of his Federal Rule of Civil Procedure 12(b)(6) motion to dismiss all counts of the Complaint filed by Plaintiffs Kevin D. Motykie, Katherine D. Torbick, and Katherine D. Torbick, as natural mother and next friend of JT, a minor (collectively, "Plaintiffs'") that are directed at Dr. Motykie.

## INTRODUCTION

    In this case, Plaintiffs improperly seek to redress alleged harms arising from a state court order of protection that compelled them to leave Dr. Motykie's Inverness home. Notwithstanding that Plaintiffs *agreed* to give Dr. Motykie exclusive possession of his own home in a settlement agreement entered by the state court judge, Plaintiffs now contend that they are entitled to money damages for purported constitutional violations arising out of the state court proceedings. Rather

than address the significant legal infirmities of their Complaint, Plaintiffs offer only platitudes about the sanctity of one's home and citations to inapposite case law. Plaintiffs have failed to rebut what Dr. Motykie established in his opening brief: that the absolute litigation privilege bars all but one of Plaintiffs' state court claims as a matter of law and that all of their claims are inadequately pleaded. This Court should grant Dr. Motykie's motion to dismiss, and because repleading yet a third time would be futile, the dismissal should be with prejudice.[1]

## I. THE ABSOLUTE LITIGATION PRIVILEGE BARS ALL BUT ONE OF PLAINTIFFS' STATE LAW CLAIMS AS A MATTER OF LAW.

Dr. Motykie established in his opening brief that the absolute litigation privilege applies equally to both litigants and their lawyers, a foundational legal principle that Plaintiffs do not dispute. (Doc. No. 17 at 4-5.) Plaintiffs similarly cite no authority – nor can they – disputing that the absolute litigation privilege operates to bar claims of IIED (Count V); wrongful eviction/trespass (Count VII), conspiracy (Count VIII), breach of the covenant of quiet enjoyment (Count IX), and abuse of process (Count X) arising out of previous litigation. (*Id*.) Nor do Plaintiffs dispute that the privilege is broad, encompassing statements made before, during and after litigation so long as they relate to the proceeding. (*Id*.) In their failure to refute these three principles, Plaintiffs concede that five of their six state law claims are barred by the privilege.

Instead, Plaintiffs argue that the absolute litigation privilege cannot be decided on a motion to dismiss because it is an affirmative defense. (Doc. No. 28 at 5.) Plaintiffs are demonstrably wrong, as shown by the cases cited in Dr. Motykie's opening brief in which federal courts granted

---

[1] The Inverness Defendants raise an additional ground for dismissal; namely, that pursuant to the *Rooker-Feldman* doctrine this Court lacks subject matter jurisdiction over claims that require them to review a state court order. (Doc. No. 24 at 6-8.) Dr. Motykie joins the Inverness Defendants' arguments, to which Plaintiffs chose not to respond. Rather than agreeing to the exclusive possession provision in the settlement agreement, Plaintiffs could also have attacked that provision pursuant to 750 ILCS 60/224 (e) and the state court would have been required to hear such a request within 14 days. Plaintiffs failed to do so.

motions to dismiss based on the absolute litigation privilege because the factual allegations in the complaint established all the elements of the defense – cases that Plaintiffs neither acknowledge nor distinguish. (*See* Doc. No. 17 at 4-5, citing *Semmerling v. Bormann*, Case No. 18 CV 6640, 2019 U.S. Dist. LEXIS 233531, at *4; 2019 WL 10375623 (N.D. Ill. Sept. 11, 2019), *aff'd* 840 Fed. Appx. 869 (7th Cir. 2021), and *Sharif v. Fox*, Case No. 21 C 3500, 2022 U.S. Dist. LEXIS 185045, at *16 (N.D. Ill. Oct. 11, 2022)).

Thus, contrary to Plaintiffs' argument, a federal plaintiff pleads himself out of court where, as here, the elements of the defense are apparent from the face of the complaint. *Huerta v. Vill. of Carol Stream*, Case No. 09 C 1492, 2010 U.S. Dist. LEXIS 57088, 2010 WL 2330361 *4 (N.D. Ill. June 9, 2010) (finding that if the "presence of an affirmative defense is apparent from the allegations contained within a complaint, the affected allegations can be dismissed before a responsive pleading is filed").

Illinois pleading standards, which likewise call for dismissal when defenses are apparent from the face of the complaint, are in accord and their rationale is persuasive. As the court in *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, observed, "[t]here is no civil cause of action for misconduct which occurred in prior litigation." *Id.* at ¶ 18.[2] The *O'Callaghan* court continued:

> [P]arties should attempt to redress injuries from misconduct in judicial proceedings in the same litigation. Were it otherwise, litigation would never end. Moreover, it is improper for a trial court to review prior litigation that occurred before a different judge.

*Id.* at ¶ 28. It is for these same policy reasons that the absolute litigation privilege bars all but one of Plaintiffs' state law claims.

---

[2] In *O'Callaghan* the trial court noted that the complaint was "so defective" that "I think it's close to being sanctionable." *Id* at ¶12. The infirmities in Plaintiffs' Complaint are likewise facially apparent and warrant dismissal.

Here, Plaintiffs' allegations in their complaint and the subsequent characterization of those claims in their response brief make clear that their purported causes of action arise from communications allegedly made by Dr. Motykie or his attorney before, during, and after the litigation pursuant to which Plaintiffs were ordered to leave Dr. Motykie's Inverness home and are therefore barred by the absolute litigation privilege. Specifically, the gravamen of Plaintiffs' complaint is that Dr. Motykie made misstatements and otherwise misused the Order of Protection proceedings as a vehicle to conduct an unlawful search and seizure and otherwise damage Plaintiffs in violation of Section 1983 and state law. (Doc. No. 1 at ¶¶ 1, 11, 13-14, 18-22, 24-49, 51-59, 61-66, 74-79, 81-87, 89-97, and 99-106.) Likewise, in their response brief, Plaintiffs characterize their action as one to defend the sanctity of their home – which was allegedly breached by a court order that had been obtained through Dr. Motykie's testimony and representations to the state court judge. (Doc. No. 28 at 1.) Put simply, Plaintiffs can point to no allegations in their complaint that do <u>not</u> arise out of the Order of Protection proceedings and the absolute litigation privilege therefore bars these claims.

Plaintiffs' other two arguments regarding the privilege are beside the point and require no substantive response. **First,** Plaintiffs argue that their attempts to retrieve their personal property should not be barred by the absolute litigation privilege. (*Id.* at 7.) But Dr. Motykie did not invoke the privilege as grounds to dismiss the only claim – conversion – that involves retrieval of their personal property. The conversion claim fails for entirely separate reasons explained in Section II.C of Dr. Motykie's opening brief, which Plaintiffs fails to address or rebut. (Doc. No. 17 at 8-9.) **Second,** citing *Wells v. VRE Chicago Eleven,* LLC, 344 F. Supp. 3d 932, 949 (N.D. Ill. 2018), Plaintiffs argue that the privilege cannot apply because "no privilege could ever be enforced to support fraud." (*Id.*) This point is irrelevant because Plaintiffs' claims do not sound in fraud,

4

much less have Plaintiffs met the heightened Rule 9(b) pleading standard that would apply if they had brought fraud claims.

**II. TO THE EXTENT THAT ANY OF PLAINTIFFS' CLAIMS SURVIVE THE ABSOLUTE LITIGATION PRIVILEGE, THEY ARE INADEQUATELY PLEADED AND SHOULD BE DISMISSED.**

**A. Plaintiffs Effectively Concede That They Have Not Stated Claims of IIED, Conversion, Wrongful Eviction/Trespass, or Violation of the Covenant of Quiet Enjoyment.**

In his opening brief, Dr. Motykie showed that: (1) Plaintiffs' claims under the Eviction Act/Trespass (Count VII), and the purported violation of the covenant of quiet enjoyment (Count IX) fail because they are improper attempts to collaterally attack the Emergency Order of Protection ("EOPs") entered by the state court judge; (2) Plaintiffs' IIED claim (Count V) fails because they do not allege "extreme and outrageous" conduct; (3) their conversion claim (Count VI) claim fails because they do not identify the property that was allegedly converted; and (4) there is no private right of action under the Illinois Eviction Act, which further dooms Count VII. (Doc. No. 17 at 6-9.)

Plaintiffs do not respond to these arguments and effectively concede that they are correct. Instead of addressing the pleading deficiencies head on, Plaintiffs make generalized and inapposite constitutional arguments that have no bearing on these four state law claims.[3] Without exception, not one of Plaintiffs' cited cases involves, much less assesses the applicable pleading standard for, any of the four state law claims at issue here. *See Ker v. California*, 374 U.S. 23 (1960) (affirming drug possession convictions because arrest was not unreasonable and therefore did not violate defendants' Fourth Amendment rights); *Soldal v. Cook County*, 506 U.S. 56 (1992) (reversing

---

[3] To the extent Plaintiffs' constitutional arguments require a response, Dr. Motykie addresses them in Section II.B. below, which explains why Plaintiffs' Section 1983 claims fail.

5

summary judgment on Section 1983 claim because seizure of trailer without eviction order violated Fourth Amendment rights)[4]; *United States v. Jacobsen*, 466 U.S. 109 (1984) (affirming convictions of drug possession with intent to distribute because warrantless testing did not violate Fourth Amendment); *Silverman v. United States*, 365 U.S. 505, 511 (1961) (reversing gambling-related convictions because police eavesdropping methods violated the Fourth Amendment); *Oliver v. United States*, 466 U.S. 170 (1984) (in criminal proceeding, affirming that search did not violate defendants' Fourth Amendment rights); *Payton v. New York*, 445 U.S. 573 (1980) (holding that Fourth and Fourteenth Amendments prohibit warrantless, nonconsensual entry into a suspect's home); *Pepper v. Village of Oak Park* 430 F.3d 805 (7th Cir. 2005) (affirming dismissal of federal Section 1983 claim against police officer because private actor, not police officer, caused plaintiff's alleged constitutional deprivation); and *Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987) (affirming jury award in Section 1983 case because warrantless search was not authorized by order of possession and therefore violated Fourth Amendment).

Given Plaintiffs' failure to effectively rebut Dr. Motykie's arguments, this Court should dismiss these counts based on the pleading deficiencies identified in Dr. Motykie's motion to dismiss. Moreover, since this is Plaintiffs second bite at the apple – having made nearly identical allegations in the Chancery Court that were also dismissed – this Court should dismiss these counts with prejudice.

---

[4] Plaintiffs imply that *Soldal* supports their wrongful eviction/trespass claim, but *Soldal* is a Section 1983 case, not an eviction case. Even if the legal principles in *Soldal* applied, however, it is factually distinguishable because it involves action *without* a court order. By contrast, here, the state court heard evidence, assessed credibility, and entered an order granting Dr. Motykie exclusive possession of his own home.

**B. Plaintiffs' Section 1983 Claims Should be Dismissed Because Plaintiffs Do Not Allege The Essential Elements.**

Dr. Motykie moved to dismiss Plaintiffs' Section 1983 claims against him for two separate but independently sufficient pleading failures: first, Plaintiffs failed to allege that Dr. Motykie "acted," *i.e.,* that he engaged in any of the constitutionally prohibited conduct; and second, Plaintiffs did not allege that Dr. Motykie was a state actor. (Doc. No. 17 at 10.)[5]

Plaintiffs correctly note in their response brief that a foundational requirement for liability under Section 1983 is that the individual defendant must have "caused or participated in a constitutional deprivation." (Doc. No. 28 at 10, citing *Pepper v. Village of Oak* Park, 430 F.3d 805, 810 (7th Cir. 2005), *quoting Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Despite acknowledging that this is a requirement, Plaintiffs do not dispute Dr. Motykie's argument that they do not allege in either Count I or Count II that Dr. Motykie actually engaged in any of the purportedly unconstitutional behavior. (*See,* Doc. No. 1, Compl. ¶¶ 52-59 and 61-66, which do not refer to any actions by Dr. Motykie.) Given Dr. Motykie's lack of alleged "action," he could not have "caused or participated in a constitutional deprivation," an essential element of their Section 1983 claims, which should be dismissed on this basis alone.

But even if Plaintiffs could overcome that deficiency, they still have not met their pleading burden because they fail to allege facts showing that Dr. Motykie was a state actor. As Dr. Motykie showed in his opening brief, Plaintiffs' complaint does not plead any of the exceptions to the general rule that private individuals cannot be held liable under Section 1983. (Doc. No. 17 at 10.) Indeed, one of Plaintiffs' own cases (with very similar facts) holds that an estranged husband was

---

[5] Notably, Dr. Motykie did not move to dismiss the Section 1983 claims based on a failure to allege a constitutional deprivation, rendering irrelevant at this stage Plaintiffs' lengthy discussion of whether the alleged conduct amounted to a Fourth Amendment violation. (Doc. No. 28 at 7-10.) Dr. Motykie reserves the right to raise this issue at a later time, if appropriate.

not a state actor even though he called police to accompany him as he retrieved personal property from his wife's home pursuant to an order of possession. *Pepper*, 430 F.3d at 809 (7th Cir. 2005).

Instead, for the first time in their response brief, Plaintiffs attempt to retroactively invoke one of the pleading exceptions – conspiracy – without having alleged any facts that would support a finding that Dr. Motykie and the Inverness police officers knowingly conspired.[6] The closest Plaintiffs come to making a conspiracy allegation in their Section 1983 claim is that Dr. Motykie "obtained assistance" from the Inverness police officers (Doc. No. 1 at ¶ 10), which is a far cry from the pleading requirements of a Section 1983 conspiracy. *See Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009) (dismissing Section 1983 claim against private actors even though the complaint identified the ways the defendants allegedly cooperated because it was "bereft of any suggestion, beyond a bare conclusion, that the [private actors] were leagued in a conspiracy with the" state actors). In any event, it is axiomatic that a complaint cannot be amended by a response brief and as a result, Plaintiffs Section 1983 claims should be dismissed with prejudice. *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012).

### C. Plaintiffs' Conspiracy Claim is Patently Insufficient.

As to their conspiracy claim (Count VIII), Plaintiffs fare no better because it too is inadequately pleaded. Plaintiffs make a conclusory argument that they have sufficiently pleaded the elements of a conspiracy between Dr. Motykie and his counsel but tellingly, they do not cite to any of these supposed "specific allegations and facts." (Doc. No. 28 at 11.) Instead of addressing the pleading standard or demonstrating that they satisfied that standard, Plaintiffs cite to cases standing for the irrelevant proposition that conspiracy may be proven through

---

[6] This purported conspiracy between Dr. Motykie and the Inverness Defendants is Plaintiffs' second insufficient allegation of conspiracy. This is not the same conspiracy insufficiently alleged in Count VIII of Plaintiff's complaint, which supposedly involves Dr. Motykie and his attorney. (Doc. No. 1 at ¶¶ 98-106.)

circumstantial evidence. Neither *Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) nor *United States v. Nesbitt*, 852 F.2d 1502 (7th Cir. 1988) involve the pleading standard for conspiracy claims and they do not save Plaintiffs' conspiracy claim. Their failure to allege an agreement or a tortious or unlawful act committed in furtherance of that agreement is fatal to their claim.

Here, the state court's Order was lawfully entered, and Plaintiffs chose not to attack it or demand a hearing. Instead, they settled the OP Proceedings and agreed to Dr. Motykie's exclusive possession of the Inverness home. Plaintiffs' invitation to "draw[] on experience and common sense" leads to only one conclusion – that the conspiracy count should be dismissed.

### D. Plaintiffs Fail to State an Abuse of Process Claim.

Plaintiffs' abuse of process claim (Count X) is likewise deficient and subject to dismissal. Plaintiffs cite the applicable standard, but fail to distinguish *Erlich v. Lopin-Erlich*, 195 Ill. App. Ed 537, 539 (1st Dist. 1990) or identify any supposed act in the use of legal process that is "not proper in the regular prosecution of the proceedings." (Doc. No. 17 at 12-13.) Because abuse of process only applies when acts are taken that are *not* in the regular course of proceedings, and because the OP Proceedings that Dr. Motykie initiated were precisely the type of action available when domestic disputes involving violence arise, Dr. Motykie's actions cannot now expose him to liability. Moreover, if Plaintiffs believed that there was anything wrong with the state court Order they should have sought recourse in that particular proceeding, not pursued claims in a different court. *See O'Callaghan* at ¶ 31. Having failed to do so, Plaintiffs should be barred from raising these issues in federal court.

### CONCLUSION

For the reasons set forth herein and in his opening motion, Dr. Motykie respectfully requests that this Court dismiss with prejudice all counts of Plaintiffs' Complaint at Law directed

against Dr. Motykie (Counts I, II, V, VI, VII, VIII, IX, and X) and grant any and all other such relief as it deems just.

                                                                                                   Respectfully submitted,

                                                                                                   **GARY MOTYKIE, M.D.**

                                                                        By:    /s/ Sandy L. Morris
                                                                                      One of His Attorneys

Lydia A. Bueschel (6274638)
Sandy L. Morris (6270309)
VALENTINE AUSTRIACO & BUESCHEL, P.C.
300 East Randolph Street, Suite 3400
Chicago, Illinois 60601
T: (312) 238-9545
F: (312) 638-8137
lbueschel@vablawfirm.com
smorris@vablawfirm.com
*Attorneys for Defendant Gary Motykie, M.D.*

10

**CERTIFICATE OF SERVICE**

I, Sandy L. Morris, hereby certify that the foregoing **Defendant Gary Motykie, M.D.'s Reply Memorandum in Support of His Motion to Dismiss** was electronically filed on June 29, 2023, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

                                                    /s/ *Sandy L. Morris*
                                                    Sandy L. Morris