## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KEVIN D. MOTYKIE, *et al.*,
      Plaintiffs

     v.

GARY MOTYKIE, M.D., *et al.*,
      Defendants

No. 23 CV 1779

Judge Jeremy C. Daniel

### MEMORANDUM OPINION AND ORDER

This case is back before the Court on the defendants' motions to dismiss the plaintiffs' amended complaint. (R. 56; R. 58; R. 62.)[1] The Court previously dismissed the plaintiffs' amended complaint because, at the time, the Court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. (*See generally* R. 73.) However, on May 7, 2025, the Seventh Circuit vacated the Court's order and remanded the case for further proceedings. (R. 80.) The Seventh Circuit explained that the Court should reconsider the defendants' motions in light of the Seventh Circuit's recent decision, *Gilbank v. Wood Cnty. Dept. of Hum. Servs.*, 111 F.4th 754 (7th Cir. 2024), which "controls the scope and application of the *Rooker-Feldman* doctrine in this circuit[.]" (*Id.* at 2.)

For the reasons articulated in this Order, the Court concludes that the *Rooker-Feldman* doctrine does not apply to this lawsuit. Because the *Rooker-Feldman* doctrine does not apply, the Court considers the merits of the defendants' motions to

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

dismiss. (R. 56; R. 58; R. 62.) Defendant Gary Motykie's motion to dismiss is granted in its entirety, (R. 56) as is Defendant Howard's motion to dismiss, (R. 58). The Inverness Defendants' motion to dismiss is denied, and thus Counts I and II against the Inverness Defendants survive. (R. 62.) Finally, as discussed below, the Court requests that the parties provide supplemental briefing on the viability of Counts III and IV, against the Inverness Defendants.

## BACKGROUND

The plaintiffs, Kevin Motykie, Katherine Torbick, and J.T., a minor, brought this lawsuit against Kevin's brother, Gary Motykie ("Dr. Motykie"), Dr. Motykie's lawyer, Joseph Howard, and several police officers[2] employed by the Village of Inverness, (collectively, the "Inverness Defendants" or "Officer Defendants"). (R. 53.) The lawsuit stems from a series of events that started on December 23, 2021. On that day, Dr. Motykie, with the assistance of Howard, obtained an emergency order of protection ("EOP") in the Circuit Court of Cook County, Illinois against Kevin. (*Id.* ¶ 11.) The EOP granted Dr. Motykie exclusive possession of 1120 Glencrest Drive in Inverness (the "Inverness Residence"), (R. 58-3 at 3);[3] at the time, Dr. Motykie was renting the property to Kevin, Torbick, and her minor son, (R. 53 ¶ 14). The plaintiffs allege that Howard and Dr. Motykie "engaged in fraud and misrepresentation" in their efforts to obtain the EOP. (*Id.* ¶ 16.)

---

[2] The police officer defendants are Joseph Belmonte, Randy Akin, Scott May, and Ernie Meyerson.

[3] Though the EOP is not attached to the amended complaint, the Court will consider it because it is "referred to in the complaint and [is] central to the claims raised[.]" *Anderson v. Ill. Bell Tel. Co.*, 961 F. Supp. 1208, 1211 (N.D. Ill. 1997) (citing *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

On January 8, 2022, Dr. Motykie "obtained assistance from the Inverness Police Department" to access and possess the Inverness Residence. (*Id.* ¶ 27.) Because Dr. Motykie did not have a key to the Inverness Residence, he hired a locksmith to gain entry. (*Id.* ¶ 31.) Upon these defendants' entry, the plaintiffs allege they were told to leave immediately and only were allowed to "remove a miniscule amount of their personal property[.]" (*Id.*) On January 10, the plaintiffs appeared in state court before the judge who entered the EOP. (*Id.* ¶ 36.) The judge instructed the parties to "make arrangements concerning retrieval of [the p]laintiffs' personal property." (*Id.* ¶ 37.) The court order stated that the plaintiffs "shall be allowed to access and remove [p]ersonal property" and were to be "accompanied by a member of the Inverness Police Department." (*Id.* ¶ 39.)

According to the plaintiffs, Dr. Motykie interfered with their ability to retrieve their property, despite the court order. For instance, the plaintiffs purportedly provided an itemized list of property to Howard that they sought to retrieve; Dr. Motykie allegedly "highlighted the items that he somehow decided" the plaintiffs could have, which they state was "only a small percentage, 5%, of their personal property." (*Id.* ¶¶ 40–41.) In addition, when the plaintiffs arrived to retrieve their property on the agreed-upon date, January 30, they were allotted only two hours to take their property and were limited in what they were allowed to take. (*Id.* ¶ 45.) The plaintiffs also assert that over the course of the next several months, property was randomly delivered to them in various states of disarray. (*Id.* ¶¶ 47–51.) From

the plaintiffs' estimation, "approximately 80% of [their] property is still missing." (*Id.* ¶ 56.)

The EOP proceeding ended in settlement on September 14, 2022. (R. 64-1.)[4] No plenary order of protection was ever entered, and the case was formally dismissed on September 14, 2023. (R. 64-2.) This action was filed on March 21, 2023—shortly after the settlement in state court, but before the case was officially dismissed. (R. 1.) After the plaintiffs filed an amended complaint (R. 53), all defendants moved to dismiss. (R. 56; R. 58; R. 62.) The Court originally granted those motions to dismiss on the basis that the *Rooker-Feldman* doctrine barred the action. (R. 73.) The plaintiffs appealed, (R. 75), and the Seventh Circuit vacated and remanded, (R. 81.)

After the Seventh Circuit remanded this case back to this Court, the Court invited the parties to file briefs addressing the *Rooker-Feldman* doctrine in light of *Gilbert*. (R. 84.) The plaintiffs and the Inverness Defendants did so. (R. 85; R.86); Dr. Motykie and Howard did not.

## LEGAL STANDARD

Rule 12(b)(1) "governs dismissals based on a lack of subject-matter jurisdiction." *Santoyo v. Rivera*, No. 24 C 1233, 2025 WL 1736830, at *1 (N.D. Ill. June 23, 2025). District courts lack appellate jurisdiction over state-court judgments. *Gilbank*, 111 F.4th at 765. "Under the *Rooker-Feldman* doctrine" a district court does not have "jurisdiction to hear a claim that seeks to overturn a state court judgment."

---

[4] The Court may consider documents attached to the plaintiffs' responses to the various motions to dismiss, as they are consistent with the factual allegations in the complaint. *Edwards v. Dart*, No. 21 C 5665, 2022 WL 3543474, at *1 n.4 (N.D. Ill. Aug. 17, 2022) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012)).

*Santoyo*, 2025 WL 1736830, at *1 (citing *Gilbank*, 111 F.4th at 765). Rule 12(b)(6) requires a plaintiff to allege facts that "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original). "[P]laintiffs do not have to recite every detail related to their allegations. They just have to include enough facts to present 'a story that holds together.'" *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018)).

Motions brought under either Rule 12(b)(1) or 12(b)(6) "test[ ] the sufficiency of the complaint, not the merits of the case." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022) (Rule 12(b)(6)); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (Rule 12(b)(1)). Both types of motions require the Court to "accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Gociman*, 41 F.4th at 885. "When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the Court should consider the Rule 12(b)(1) challenge first. If the court dismisses . . . for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed." *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998).

## ANALYSIS

## I. SUBJECT MATTER JURISDICTION – THE ROOKER-FELDMAN DOCTRINE

The Court first addresses whether it has subject-matter jurisdiction over this case. After previously determining it did not, the Court now finds, in accordance with

5

the Seventh Circuit's guidance in *Gilbank*, that *Rooker-Feldman* does not bar the plaintiffs' claims.

The *Rooker-Feldman* doctrine "blocks federal jurisdiction when [five][5] elements are present." *Gilbank*, 111 F.4th at 766.

> *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment. . . . [*Fifth*, the] *Rooker-Feldman* doctrine does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in state courts.

*Id.* (citations omitted) (emphasis in original). "Only when every element is met does *Rooker-Feldman* enter the picture." *Id.* at 792 (Kirsch, J. concurring in part and dissenting in part).

Elements one, three, and five are easily satisfied. Contrary to the plaintiffs' assertion that there is "no support in the record" that they were losers in state court, (R. 85 at 3), the record shows that this is simply not true. The EOP was entered against the plaintiffs on December 23, 2021. (R. 53 ¶ 6.) The EOP was enforced on January 8, 2022. (*See, e.g.*, *id.*, ¶¶ 27, 31; R. 86 at 3.) The EOP was only vacated because the parties settled the state court action. (R. 64-1.) Simply put, the plaintiffs were not the victors in state court. In addition, the state court judgment, the EOP, caused the alleged injury underlying the claim. *See Gilbank*, 111 F.4th at 766 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, the

---

[5] The Seventh Circuit acknowledged that the fifth element is one "that the Supreme Court has not had occasion to address directly," but is present in the Seventh Circuit's case law. *Gilbank*, 111 F.4th at 766.

plaintiffs brought Fourth and Fourteenth Amendment claims—and a slew of state court claims—stemming from conduct that took place on January 8, 2022, the day the EOP was "effectuated." (*See, e.g.*, R. 53 ¶¶ 61–77); *see also Gilbank*, 111 F.4th at 768. Without the EOP, those alleged injuries would not have occurred.

As to whether the plaintiffs had the opportunity to raise their federal issues in state court, they did. "[S]tate law must 'have effectively precluded' raising the issue in state court for the federal plaintiff to succeed on a 'no reasonable opportunity' argument." *Gilbank*, 111 F.4th at 778–79 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558–59 (7th Cir. 1999)). The plaintiffs' argument that they "had no opportunity to appeal the state court's entry of the [EOP] nor could the [p]laintiffs[ ] appeal the state court's grant of exclusive possession of the Inverness home to Gary Motykie" is not persuasive for several reasons. First, the EOP outlines the steps by which a respondent may contest it. (*See* R. 58-3 at 12.) Further, Illinois Supreme Court Rule 307 allows for the appeal of interlocutory orders when they "grant[ ], modify[ ], refus[e], dissolve[e], or refus[e] to dissolve or modify an injunction[.]" Ill. Sup. Ct. R. 307(a)(1). The EOP was an injunction that was immediately appealable. *See Fricke v. Jones*, 198 N.E.3d 171, 176 (Ill. App. Ct. 2021) (Under Illinois law an "order of protection is an injunctive order because it directs a person to refrain from doing something, such as to refrain from entering or residing where he or she lived before the order was entered.") Moreover, the suggestion that the plaintiffs could not be heard in state court is further contradicted by the fact that the plaintiffs appeared in state court on January 10, 2022, two days after the EOP was effectuated, in front

of the very judge who entered the order. (R. 53 ¶ 37.) There is no indication that the plaintiffs raised the issue of the validity of the EOP, and likewise no indication that they were prevented from raising the issue. The state action was settled on September 14, 2022. (R. 64-1; R. 64-2.) So, the plaintiffs had nearly nine months to raise this issue in the state court; the record suggests they did not. State law did not "effectively preclude" the plaintiffs from doing this. *Gilbank*, 111 F.4th at 778.

Though these three elements are met, elements two and four are not. The second element requires that the state court judgment became final before the federal proceedings began. *Id.* at 766. This element was not in doubt in *Gilbank*, so the Seventh Circuit has not offered additional guidance on what it means for a state court judgment to be "final." That said, the Court must consider whether the EOP was a "final judgment" for the purposes of this analysis. "State law determines the finality of a state judicial decision[.]" *Mehta v. Att'y Reg. & Disciplinary Comm'n*, 681 F.3d 885, 887 (7th Cir. 2012). Under Illinois law, "the court's decision on the petitioner's right to a plenary order is the usual final order in an order of protection proceeding." *Scheider v. Ackerman*, 860 N.E.2d 1140, 1141 (Ill. 2006). Here, the EOP never advanced to the stage of a plenary order of protection. (*See* R. 58-3 at 11–12 (explaining procedures for contesting the "short-term order of protection" and how to request a "plenary order of protection").) Indeed, the EOP was discontinued when the parties settled. (*See* R. 64-1 at 3 (petitioner agreeing to vacation of EOP).) The EOP, therefore, is not a final judgment.

As for the fourth element, when a district court is asked to "review and reject" a state-court judgment, what that means is that "the plaintiff asks a federal court to 'overturn' or 'undo' the state court judgment." *Gilbank*, 111 F.4th at 792 (Kirsh, J., concurring in part and dissenting in part) (quoting *Exxon*, 544 U.S. at 287 n.2, 292–93). "Claims for damages do not generally 'seek to undo any state court judgment.'" *Santoyo*, 2025 WL 1736830, at *2 (quoting *Gilbank*, 111 F.4th at 791–92). Though analyzing a claim for damages "might result in a federal court frowning upon the state court's conclusions . . . that is decidedly not a *Rooker-Feldman* problem." *Gilbank*, 111 F.4th at 791. "[T]he appropriate question is whether 'the federal plaintiff [is] seeking to set aside a state court judgment, or does [s]he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Brokaw v. Weaver*, 305 F.3d 660, 666 (7th Cir. 2002) (quoting *GASH Assoc. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)) (alterations in original).

Though the Inverness Defendants point out that the plaintiffs' "case could not prevail without the district court finding that, as [the p]laintiffs expressly alleged, the EOP was entered based on wrong information[,]" (R. 86 at 5), *Gilbank* is explicit in its mandate that *Rooker-Feldman* can only apply when "the plaintiff asks a federal court to reverse a state court judgment." *Gilbank*, 111 F.4th at 792. The plaintiffs are not asking this Court to *reverse* the EOP; there is nothing now to reverse. The plaintiffs instead are seeking damages for alleged constitutional and state law violations "associated" with the EOP. (*See generally* R. 53); *see also Santoyo*, 2025 WL

1736830, at *2 (noting that the plaintiff, who sought damages for violations associated with an order of eviction was not seeking to "undo" or "overturn" the underlying order). Because the "core lesson" is that "*Rooker-Feldman* applies only when a plaintiff seeks relief from a federal court that would reverse a state court judgment," *Gilbank*, 111 F.4th at 794, and the plaintiffs "'did not ask the district judge . . . to alter or annul any decision by a state judge,'" *id.*, at 797 (quoting *Milchtein v. Chrisholm*, 880 F.3d 895, 897 (7th Cir. 2018)), the fourth element in this analysis is not met.

Because two of the five *Rooker-Feldman* elements are not met, jurisdiction is not barred in this case. As a result, the Inverness Defendants' motion to dismiss, (R. 62), which made only subject matter jurisdiction arguments, is denied.

The Court now can consider the merits of Dr. Motykie's and Howard's Rule 12(b)(6) motions. (R. 56; R. 58.)

## II.   MOTIONS TO DISMISS PURSUANT TO RULE 12(B)(6)

### A.    Dr. Motykie's Motion to Dismiss

Dr. Motykie moves to dismiss all claims against him. (R. 57.)

#### 1.    Federal Claims

The Court first considers whether the § 1983 claims against Dr. Motykie for violations of the Fourth Amendment (Count I) and the Fourteenth Amendment (Count II) should be dismissed. Dr. Motykie argues that the plaintiffs' "conclusory assertions that [he] is somehow a state actor for Section 1983 purposes are insufficient to state a claim." (*Id.* at 8.) The plaintiffs respond that "[p]rivate parties who corruptly conspire with a judge . . . are [ ] acting under color of state law within

10

the meaning of § 1983[.]" (R. 66 at 14 (quoting *Dennis v. Sparks*, 449 U.S. 24, 29 (1980).) Thus, because Dr. Motykie "caused and participated in a constitutional deprivation," he "is a state actor and acted under color of law[.]" (*Id.*)

It is true that "the conduct of private actors, in some cases, can constitute state action." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). For instance, "[p]rivate action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights[.]" *Id.* (citing *Dennis*, 449 U.S. at 27–28). But "[p]rivate actors do not act under the color of law merely by requesting the assistance of the law, even when they may not have grounds to do so." *Mumm v. Wetter*, No. 05 C 6149, 2006 WL 163151, at *3 (N.D. Ill. Jan. 20, 2006). The plaintiffs needed to "plead facts sufficient to show that [Dr. Motykie] . . . 'had a meeting of the minds and thus reached an understanding with a state actor to deny [the plaintiffs] a constitutional right." *Hegwood v. Meijer, Inc.*, No. 17 C 2887, 2017 WL 5517255, at *2 (N.D. Ill. Nov. 17, 2017) (quoting *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016)).

Those allegations are not in the complaint. The plaintiffs allege, with respect to Count I, that Dr. Motykie and the Defendant Officers "reached an agreement to unlawfully enter [the p]laintiffs' Inverness residence[.]" (R. 53 ¶ 65.) No similar allegation exists with respect to Count II. Either way, that is a conclusory allegation that does not satisfy federal notice pleading standards. *See Gomez v. Garda CL Great Lakes, Inc.*, No. 13 C 1002, 2013 WL 4506938, at *4 (N.D. Ill. Aug. 23, 2013) (dismissing allegation that private parties "acted jointly" when they "entered into an

11

agreement amongst themselves to retaliate against Plaintiffs for the lawful assertions of the Fifth Amendment privilege"). As such, Dr. Motykie's motion to dismiss as to Counts I and II is granted.

## 2. State Law Claims

The plaintiffs bring a myriad of Illinois state law claims[6] against Dr. Motykie. The Court addresses these next.

### a. Counts V, VII, VIII, IX, & X – Absolute Litigation Privilege

Dr. Motykie argues that the plaintiffs' intentional infliction of emotional distress (Count V), wrongful eviction (Count VII), state law conspiracy (Count VIII), breach of covenant of quiet enjoyment (Count IX), and abuse of process (Count X) claims must be dismissed because they are barred by the absolute litigation privilege. (R. 57 at 8.) The plaintiffs do not respond to this argument; they therefore have waived any response. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

> Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation . . . . The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.

*Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (citations omitted). While the privilege "has historically been applied to attorneys' communications . . . the privilege [also] applies to out-of-court communications between an attorney and his

---

[6] The Court may exercise jurisdiction over these claims through supplemental jurisdiction. 28 U.S.C. § 1367.

client regarding pending litigation as well as out-of-court communications between the litigants' attorneys." *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1009 (Il. App. Ct. 2015); *see also Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697 (N.D. Ill. 2022) (noting that Illinois courts have extended the privilege to "conduct . . . performed in the practice of law"). Private litigants also enjoy the absolute litigation privilege. *See Loughne v. Rogers*, No. 19 C 0086, 2019 WL 4242486, at *5 (N.D. Ill. Sept. 6, 2019) (explaining that Illinois' litigation privilege applies to private parties and that the privilege has been extended to torts beyond defamation).

The absolute litigation privilege is an affirmative defense. *Semmerling v. Bormann*, No. 18 C 6640, 2019 WL 10375623, at *1 (N.D. Ill. Sept. 11, 2019) (citing *O'Donnell v. Field Enterprises, Inc.*, 419 N.E.2d 1212, 1219 (Ill. 1986)). While ordinarily the plaintiff "need not anticipate and attempt to plead around affirmative defenses . . . [a]n exception applies when the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2010) (citations and quotations omitted).

Here, the plaintiffs allege that Dr. Motykie "filed the Petition for [EOP]" and made "false[ ] claim[s] to the judge" that resulted in the state court awarding him the premises, (*see, e.g.*, R. 53 ¶ 88) (Count V); that he "did go and file pleadings with false allegations in order to coax a circuit court judge to issue court orders to remove [the p]laintiffs from the Inverness residence" and made "false[ ]" allegations about his tenancy of the residence, (*id.* ¶ 102) (Count VII); that "[d]uring the conversations to schedule the removal of [the p]laintiffs from their residence . . . the [d]efendants

formed an unlawful conspiracy," and that an agreement was formed to evict the plaintiffs and deprive them of their rights, (*id.* ¶¶ 110–112) (Count VIII); that, along with Howard, he "unlawfully used the legal system to interfere with and prevent [the p]laintiffs' peaceable and quiet enjoyment of the Inverness residence," (*id.* ¶ 122) (Count IX); and that he, again along with Howard, "used false allegations in a[ ] Petition for [EOP,] (*id.* ¶¶ 127–129; 132–136) (Count X). The cores of each of these claims implicate the litigation privilege, as they focus on things "said or written in the course of a legal proceeding." *Steffes*, 144 F.3d at 1074. Without the statements made in the legal proceeding, and the actions stemming from the proceeding, the events underlying the causes of action alleged would not have transpired. Because the plaintiffs have pled that the underlying statements made in the course of a legal proceeding gave rise to all of their state law claims—except for their conversion claim, discussed below—they have set forth "everything necessary to satisfy the affirmative defense" of the absolute litigation privilege. *Hyson USA*, 821 F.3d at 939. For those reasons, Counts V, VII, VIII, IX, and X against Dr. Moytkie are dismissed.

### b. Count VI - Conversion

The sole remaining claim against Dr. Motykie is Count VI, conversion. Dr. Motykie argues that the "[p]laintiffs have failed to allege even the modicum of detail required by notice pleading." (R. 57 at 8.) The only reference to conversion in the plaintiffs' response is that Dr. Motykie's motion on Count VI must be denied, (R. 66 at 13); there is not a lick of analysis as to why the conversion claim is adequately pled. Again, arguments not made are waived. *Bonte*, 624 F.3d at 466.

Nonetheless, the Court still considers whether the plaintiffs adequately pled conversion against Dr. Motykie. Under Illinois law, to state a claim for conversion, the plaintiffs must allege: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Toll Processing Servs., LLC v., Kastalon, Inc.*, 880 F.3d 820, 824 (7th Cir. 2018) (quoting *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. 1990)) (quotations omitted). Further, "[f]or an object to be the subject of a conversion claim it must be a 'specific chattel' which is 'an identifiable object of property of which the plaintiff was wrongfully deprived.'" *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *9 (N.D. Ill. May 27, 2008) (quoting *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985)).

Here, the plaintiffs alleged that Dr. Motykie "assumed control of the [p]laintiffs' personal property and belongings including but not limited to money, antique handguns, furniture, family photos, family heirlooms, household goods, clothing, and personal momentums that can never be replaced . . . and several automobiles[.]" (R. 53 ¶ 92.) They also allege that they had "the right to control and retain possession of their personal property and their personal belongings" and that Dr. Motykie's assumption of control over the property was "illegal, unlawful and unauthorized[.]" (*Id.* ¶¶ 93–94.) The plaintiffs further assert that they demanded that their property be returned in the state court proceedings. (*Id.* ¶ 95.) The problem,

15

however, is that the complaint does not tell the Court what property the plaintiffs have been wrongfully deprived of for the conversion claim in this litigation. The plaintiffs allege that they have "not recovered 80% of their personal property[.]" (*Id.* ¶¶ 94–96.) But while the plaintiffs provided a general list of property they assert Dr. Motykie has control over (*see id.* ¶ 52), it is not clear what of that property is the subject of the conversion claim, particularly since 20% of the property has apparently been returned. In addition, the allegation that the plaintiffs had the right to control the personal property is conclusory; it does not sufficiently explain how the plaintiffs had an absolute and unconditional right to the immediate possession of the property. For these reasons, the complaint fails to state a conversion claim; Count VI is dismissed.[7]

### B. Howard's Motion to Dismiss

Howard argues that all claims against him—Counts VIII, IX, and X—are subject to the absolute litigation privilege and thus should be dismissed. (*See, e.g.*, R. 58 at 2.) The Court agrees. The conversations and actions that Howard allegedly took in relation to those claims are tied up in the same EOP hearing as Dr. Motykie. (*See, e.g.*, R. 53 ¶¶ 110–112, 122, 127–129.) For the reasons the Court already articulated with respect to Dr. Motykie's motion to dismiss, Howard's motion to dismiss Counts VIII, IX, and X is granted.

### III.    COUNTS III AND IV

---

[7] The plaintiffs' state in their complaint that they have attached a "list of personal property that was provided to [Dr. Motykie][.]" (R. 53 ¶ 40.) No such document was attached to the amended complaint. The Court therefore cannot draw any reasonable inferences regarding what property may be the subject of the conversion claim.

Finally, the Court must address Counts III and IV. The Court has reservations about the viability of a state law indemnification claim and *respondeat superior* claim against a municipality and its police officers. The Court therefore requests additional briefing from the parties subject to these claims as to whether Counts III and IV plead viable claims. Any briefing on this subject, and only this subject—from plaintiffs and defendants—must be filed by August 15, 2025.

## CONCLUSION

For the reasons articulated in this Order, the *Rooker-Feldman* doctrine does not bar this lawsuit. Defendant Gary Motkyie's motion to dismiss [57] is granted, as is Defendant Joseph Howard's motion to dismiss [58]. The Inverness Defendants' motion to dismiss [62] is denied. The Court orders the Inverness Defendants and the plaintiffs to submit supplemental briefing on the viability of Counts III and IV by August 15, 2025. The Court will set a schedule for any amendments to the complaint and to answer the complaint after it has addressed Counts III and IV.

Date: July 30, 2025

_____

JEREMY C. DANIEL
United States District Judge