# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN D. MOTYKIE, et al., | ) |
| Plaintiffs, | ) Case No. 1:23-cv-01779 |
| vs. | ) |
| | ) Judge Jeremy C. Daniel |
| GARY MOTYKIE, M.D., et al., | ) |
| Defendants. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Defendant Gary Motykie, M.D. ("Dr. Motykie") seeks sanctions under Federal Rule of Civil Procedure 11 because of spurious allegations in Plaintiffs' Second Amended Complaint, which Plaintiffs raise for the first time four years after the events that led to this action. These new allegations that Dr. Motykie somehow "bribed" unnamed Inverness police officers as part of a conspiracy to violate Plaintiffs' constitutional rights are unfounded and counterfactual, as discussed in Dr. Motykie's opening brief.

Plaintiffs' response effectively concedes that there is no basis for these bribery claims; they offer not even a modicum of evidentiary support to satisfy Rule 11. Instead, they rely on innuendo and speculation based on six police reports. Rather than support Plaintiffs' baseless allegations, however, these reports show that the Inverness police officers and Dr. Motykie complied with the Emergency Orders of Protection ("EOPs"), refuting any argument of impropriety on the part of Dr. Motykie and the officers. Without a factual basis for these newfound bribery allegations, Plaintiffs ask the Court to delay consideration of sanctions, arguing Dr. Motykie's motion is prematurely made and that Plaintiffs should not be required to provide detail of a conspiracy at the pleadings stage.

Plaintiffs' argument misunderstands the basis for the sanctions motion and ignores the duty of inquiry that Rule 11 imposes on litigants and counsel. Dr. Motykie seeks sanctions because, in an apparent attempt to cure prior pleading deficiencies, Plaintiffs have added an outlandish claim that Dr. Motykie engaged in bribery, despite having no evidentiary support for such a claim and no reasonable basis to believe evidentiary support exists. Plaintiffs have not defended, and cannot defend, their insertion of bribery allegations into their most recent pleading. The allegations were made without foundation and without the requisite inquiry into whether evidence may exist to support them, and Plaintiffs should be sanctioned accordingly.

### I. Plaintiffs Offer No Support for Their Fabricated Bribery Allegations.

Plaintiffs' Opposition never takes ownership of (or even mentions) the bribery allegations, and their limited substantive arguments are not responsive to Dr. Motykie's request for sanctions. Plaintiffs focus only on the events of January 8, 2022. Even if Plaintiffs believed police officers violated their constitutional rights by entering the Inverness property and enforcing the EOPs on that day, that belief does not justify fabricating that a private citizen paid a bribe to cause the events. Plaintiffs already revealed they did not actually investigate whether a bribery occurred, as they pled it on only a "belief," without so much as a claim of "information." Plaintiffs' Opposition now confirms the lack of foundation for the bribery allegations, as Plaintiffs offer no support for (or defense of) the allegations. Plaintiffs' silence serves as an implicit admission that they do not reasonably believe that a bribery occurred.

Moreover, Plaintiffs' reliance on the police reports attached to their pleading as somehow "back[ing] up" their conspiracy claims is misplaced entirely. Contrary to Plaintiffs' contentions, the police report from January 8, 2022, shows the police officers' actions on that day were legal

and professional, as was the police conduct reflected in the other five attached reports. *See* Dkt. 95-10, Second Amended Complaint, Exhibit I. To be clear, the six reports are:

- Inverness Police Report dated November 29, 2021. This report reflects that police were called to the Inverness property at the time Plaintiffs lived there and notes there was a Chevy SUV in the driveway and "SUBJ IS KNOWN TO CARRY A GUN AND KNIFE." Dkt. 95-10, p. 2. It is unclear what else occurred during this police visit, as Plaintiffs did not include all pages of the report.

- Barrington Police Report dated November 30, 2021. The second report contains the notes of *Barrington* police, not any Inverness officers. Dkt. 95-10, p. 3. It reflects that police were dispatched to Dr. Motykie's business, a medical spa in Barrington, and describes that a spa employee had been followed by Plaintiff Kevin Motykie ("Kevin") and by Christopher Bono. *Id.* The report references a prior incident that concerned Mr. Bono threatening that same employee with a knife. *Id.* The report notes Mr. Bono drives a Chevy Trailblazer and reflects that Kevin was allowing Mr. Bono to live at Dr. Motykie's house without Dr. Motykie's permission. *Id.* Barrington police also recorded Dr. Motykie's concerns arising from additional threats made by both Kevin and Mr. Bono. *Id.*

- Inverness Police Report dated December 24, 2021. The third report is categorized as an "Outside Department Assist," and reflects that an Inverness police officer (not one of the Defendants in this case) was present at the Inverness Property to assist the Cook County Sheriff's Office in its service of orders of protection. *See* 95-10, pp. 4-5. No service was effected, as there was no answer at the door. *Id.*

- Inverness Police Report dated January 5, 2022. The fourth report is also categorized as an "Outside Department Assist" and reflects that two Inverness police officers (neither of which are Defendants in this case) were present at the Inverness Property to assist the Cook County Sheriff's Office in a second attempt to serve orders of protection. *See* Dkt. 95-10, pp. 6-7.

- Inverness Police Report dated January 8, 2022. The fifth report reflects that Inverness police were again at the Inverness property to serve the orders of protection and that under the orders, Plaintiffs were to immediately vacate the residence upon service. *See* Dkt. 95-10, pp. 8-11. The report shows officers met Dr. Motykie at the house after confirming via the Cook County Assessor that Dr. Motykie owned the property. *Id.* The officers observed Dr. Motykie attempt to open the door with his key, noted "it was obvious that the cylinder had been changed" on the lock, and waited while Dr. Motykie contacted a locksmith to gain entry.[1] *Id.* pp. 10-11. The officers entered the house and were met by Kevin in

---

[1] Plaintiffs acknowledged they were inside the residence but "refused to answer the door" when officers knocked. *See* Dkt. 95, Second Amended Complaint, ¶ 95.

- the foyer, sat down with him at the kitchen counter, served the orders of protection to Plaintiffs, explained their remedies under the orders, and then allowed Plaintiffs two and a half hours to gather belongings and exit the house. *Id.*, p. 11.

- <u>Inverness Police Report dated January 30, 2022.</u>  The final report reflects police officers were present at the Inverness house again, pursuant to court order, while Kevin was there to pick up more personal items. *See* Dkt. 95-10, pp. 12-13.

In summary, the reports show:  Inverness police had been called to the property before and Plaintiffs were allowing a dangerous individual, Christopher Bono, to live there with them; there had been two prior attempts to serve the EOPs on Plaintiffs without success; Inverness police officers were present at the house on January 8, 2022, to serve and enforce the EOPs; the officers confirmed Dr. Motykie's ownership before arrival; and Dr. Motykie had to hire a locksmith to enter his property because Plaintiffs had changed the locks and refused to open the door.  Rather than support Plaintiffs' claims that police officers acted unlawfully by not stopping Dr. Motykie from accessing his property and by entering the house, the reports instead show officers were fully informed of Dr. Motykie's and Plaintiffs' rights regarding the property, acted in accordance with those rights, and exercised patience and professionalism when engaging with Plaintiffs.

**II.     Plaintiffs' Procedural Argument is Without Merit.**

Plaintiffs' only other opposition to sanctions is their contention that Dr. Motykie's Rule 11 motion was brought "way too early," and should be delayed until after discovery.  Dkt. 116, Opp., p.3.  To the extent Plaintiffs posit that they can file baseless allegations without consequence so long as they somehow dig up evidence to support their claims later, that position is untenable and contradicted directly by the primary case cited in Plaintiffs' Opposition.  *See Lichtenstein v. Consolidated Servs. Corp.*, 173 F.3d 17, 23 (1st Cir. 1999) ("a party who brings a suit without conducting a reasonable inquiry and based on nothing more than a prayer that helpful facts will somehow emerge, and who through sheer fortuity is rewarded for his carelessness, is nevertheless

4

vulnerable to sanctions.") (*citing Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994) ("A shot in the dark is a sanctionable event, even if it somehow hits the mark.")).

If Plaintiffs' position is instead that a sanctions motion should only be considered after parties proceed through discovery, that position is also wrong. Rule 11 is a pleadings rule, and a motion for sanctions "should be filed … as soon as practicable after discovery of a Rule 11 violation." *See Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992). Here, the sanctionable nature of Plaintiffs' bribery allegations is clear from the face of their pleading and the procedural history of this case. Indeed, Plaintiffs' sanctionable conduct under Rule 11 (inserting fabricated bribery allegations into their latest pleading attempt) is the means through which they attempt to cure their prior pleading deficiencies (their conclusory conspiracy allegations) and avoid another dismissal.

Plaintiffs should not be allowed to violate Rule 11 in their attempt to satisfy Rule 12. Contrary to Plaintiffs' protestations otherwise, sanctionable allegations are properly raised in tandem with a court's 12(b)(6) considerations, particularly when claimants have had multiple opportunities to state a claim. That is the lesson from *Fries v. Helsper*, where a claimant presented "baseless allegations" of misconduct by private individuals in an attempt to state a Section 1983 against them. *See* 146 F.3d 452, 459 (7th Cir. 1998). The plaintiff in *Fries* filed multiple pleadings attempting to allege that a "conspiracy existed," including that defendants "conspired" with a state court judge and "acted under the color of law" to unconstitutionally "deprive him of his property." *Id.* at 457-59. The Seventh Circuit explained that sanctions are warranted if a litigant files claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpo, and further clarified that frivolous claims include ones that are "baseless and made without a reasonable and competent inquiry." *Id.* at 458 (internal quotation omitted). The court chastised the plaintiff there for "impugn[ing]" members of the judiciary and for "unfounded" and "scurrilous

allegations" against private individuals. *Id.* at 459. The court affirmed the trial court's dismissal of the claims and discretionary decision to impose sanctions in the form of legal fees and an injunction restricting plaintiff from filing claims based on the same alleged injury.[2] *Id.* at 459 ("the only evidence of improper conduct consists of the plaintiff's own baseless accusations that court officials were personally biased and abused their authority and that a conspiracy existed.").

Plaintiffs here have also had multiple chances to seek redress for their alleged injuries – in state court and now before this Court. As with the plaintiff in *Fries*, Plaintiffs have filed "baseless accusations" that a "conspiracy existed" in multiple pleadings. And most egregious, in their latest attempt to draw Dr. Motykie into litigation, Plaintiffs have crossed the ethics line drawn by Rule 11 by fabricating – four years after the events in this case took place – that Dr. Motykie bribed police officers to serve and enforce the EOPs. Plaintiffs' misuse of the court system should have consequences, and Dr. Motykie asks this Court to impose them.

## CONCLUSION

Plaintiffs' response brief provides no reason to believe their bribery allegations have, or will have, any evidentiary support. For the reasons above and those detailed in Dr. Motykie's opening motion, Dr. Motykie asks this Court to sanction Plaintiffs and their counsel under Rule 11, through the imposition of legal fees incurred by Dr. Motykie and through any other means this Court deems just.

---

[2] The *Fries* court noted that claimant and his counsel did not attend the sanctions motion hearing despite receiving notice in that case. *Id.* at 456. Similarly, here, Plaintiffs did not appear to the noticed hearing for Dr. Motykie's sanctions motion and did not contact chambers to explain the absence. *See* Dkt. 110. Despite Plaintiffs' failure to appear, this Court provided them an opportunity to file a brief in response to Dr. Motykie's sanctions motions, *see id.*, which they have now done.

6

Dated: December 4, 2025.                    Respectfully submitted,

                                            **GARY MOTYKIE, M.D.**

                                    By:  /s/ Lydia Bueschel
                                                One of His Attorneys

Lydia A. Bueschel (6274638)
Sandy L. Morris (6270309)
VALENTINE AUSTRIACO & BUESCHEL, P.C.
300 E. Randolph Street, Suite 3400
Chicago, Illinois 60601
T: (312) 288-8285
F: (312) 638-8137
lbueschel@vablawfirm.com
smorris@vablawfirm.com
*Attorneys for Defendant Gary Motykie, M.D.*

## CERTIFICATE OF SERVICE

I, Lydia A. Bueschel, hereby certify that the foregoing **Defendant's Reply in Support of Motion for Sanctions** was electronically filed on **December 4, 2025**, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

/s/     *Lydia A. Bueschel*
          Lydia A. Bueschel