UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kevin D. Motykie, *et al.*,<br>　　　Plaintiff<br><br>　　v.<br><br>Gary Motykie, M.D., *et al.*,<br>　　　Defendant | No. 23 CV 1779<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendants' motions to dismiss [99, 102] the second amended complaint are granted. The deadline to file a third amended complaint is February 27, 2026. The Court will not extend this deadline or allow any further amendments to the complaint. Defendant Gary Motykie's motion for sanctions [106] is denied without prejudice.

### STATEMENT

The second amended complaint alleges that: (1) Inverness police officers violated the plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures (Count I); (2) Inverness police officers violated the plaintiffs' Fourteenth Amendment rights to due process (Count II); (3) the Village of Inverness must indemnify the plaintiffs for the Inverness police officers' violations of the plaintiffs' constitutional rights (Count III); (4) Gary Motykie converted the plaintiffs' property to his own use (Count VI); (5) Gary Motykie conspired with Inverness police officers to violate the plaintiffs' Fourth Amendment rights (Count XI); (6) Gary Motykie conspired with Inverness police officers to violate the plaintiffs' Fourteenth Amendment rights (Count XII); and (7) Gary Motykie breached bailments with respect to the plaintiffs' property (Counts XIII and XIV).

The following well-pleaded allegations are taken from the second amended complaint and are taken as true for purposes of resolving the defendants' motions to dismiss. The plaintiffs leased a home located in Inverness, Illinois from defendant Gary Motykie, who owned the Inverness home. (R. 95 ¶ 14.) On December 23, 2021, a state court judge entered an order of protection against plaintiffs Kevin Motykie and Katherine Torbick that granted Gary Motykie possession of the Inverness home. (*Id.* ¶¶ 11, 16, and 25.) Inverness police officers agreed to enforce the order of protection. (*Id.* ¶ 13.) Gary Motykie hired a locksmith to obtain access to the Inverness home. (*Id.*) After gaining access to the Inverness home, Gary Motykie and the Inverness

police officers served the order of protection on the plaintiffs and took possession of the Inverness home. (*Id.* ¶ 93.) The plaintiffs did not have an opportunity to remove their possessions, which remained in the Inverness home after Gary Motykie obtained possession of the home. (*Id.* ¶ 31.) Gary Motykie subsequently interfered with the plaintiffs' attempts to obtain their possessions form the Inverness home after Gary Motykie took possession of the home. (*Id.* ¶ 34.)

The following allegations, which are no more than conclusions, are not well-pled. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). First, "[i]t is believed that there was an ex parte agreement reached between the state court trial judge and Defendant's attorney, Joseph G. Howard, and Defendant, Gary Motykie, M.D., to enter an order of possession in favor of Defendant, Gary Motykie, M.D., by skipping the inquiries required by 750 ILCS 60/214(b)(2)(A-B)." (R. 95 ¶ 18.) The plaintiffs assume an ex parte agreement based on the state court judge's acceptance of Joseph Howard and Gary Motykie's statements and, according to the plaintiff, his failure to properly consider state law. (*See, e.g., id.*) A bad day in court does not make a conspiracy or an ex parte agreement. And a conclusory allegation such as this does not make a well-pled allegation.

Similarly, the plaintiffs allege that the Inverness police officers took a bribe to forcibly break into the Inverness home. (R. 95 ¶ 94.) The plaintiffs qualify this allegation with "it is believed," but offer no suggestion as to what forms the basis for this belief. The plaintiffs also allege that Gary Motykie could not enter the Inverness home without the plaintiffs' approval. (R. 95 ¶ 26.) That is at odds with the order of protection, which granted Gary Motykie exclusive possession of the Inverness home. (R. 23-1 at 2.) The plaintiffs further allege that the Inverness police officers seized the plaintiffs' belongings. (R. 95 ¶ 62.) But subsequent proceedings in state court show that Gary Motykie maintained possession of the plaintiffs' belongings. (*See* R. 95-5.) The Inverness police officers did not possess anything because the plaintiffs' belongings were left at the Inverness home.

And there are no allegations that the Inverness police officers knew anything about how Gary Motykie allegedly obtained the order of protection. That renders all allegations that the Inverness police officers conspired to unlawfully enter and obtain possession of the Inverness home insufficient. It is difficult to understand how police officers acting pursuant to a facially valid court order acted "unlawfully" when they knew nothing about how the order of protection had been obtained.

As pled, the Inverness police officers acted pursuant to a court order. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992) ("Assuming, for example, that the officers were acting pursuant to a court order . . . a showing of unreasonableness on these facts would be a laborious task indeed."). The plaintiffs argue that the court order was not

a warrant. "The general rule is that searches and seizures in a home without a warrant are presumptively unreasonable." *Perry v. Sheahan*, 222 F.3d 309, 316 (7th Cir. 2000). But, as *Soldal* makes clear, acting pursuant to a court order can render a police officer's search or seizure reasonable under the Fourth Amendment. *See Soldal*, 506 U.S. at 71; *see also Perry*, 222 F.3d at 316 ("Of course, if the seizure were undertaken pursuant to a court order of eviction, a showing of unreasonableness would be 'a laborious task indeed,' although not an impossible one.").

The plaintiffs also argue that the officers did not enter the home until Gary Motykie obtained the services of a locksmith to enter the home. That does not render entry into the Inverness home pursuant to a court order unreasonable or unlawful, despite the plaintiffs' repeated characterization of it as such. The order of protection granted Gary Motykie possession of the Inverness home. As such, he had the ability to decide how to obtain access to the Inverness home and when. In summary, the well-pled allegations in the complaint, with all inferences drawn in the plaintiffs' favor, do not state a Fourth Amendment violation.

The plaintiffs' due process claims against the Inverness police officers fare no better. To the extent the plaintiffs allege a substantive due process claim, that is subsumed by the plaintiffs' Fourth Amendment claim. *See, e.g.*, *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015) ("Because the Fourth Amendment explicitly addresses the sort of physically intrusive government conduct that constitutes a seizure, that amendment rather than generalized notions of substantive due process guides such claims."). To the extent that the plaintiffs allege a procedural due process claim, the claim lies with how Gary Motykie obtained the order of protection. There are no allegations that any of the officers helped obtain the order of protection. "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trs. of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) (quotations omitted). In other words, the Inverness police officers had nothing to do with the process. And as discussed above, the plaintiffs allege no more than the Inverness police officers acted pursuant to a court order. An otherwise facially valid judicial proceeding suffices as process for Fourteenth Amendment purposes. *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975).

Because the plaintiffs have not plausibly alleged that the Inverness police officers violated the plaintiffs' constitutional rights, the Court need not address the Inverness police officers' qualified immunity claims. The same is true for the plaintiffs' indemnification claim against the Village of Inverness.

With respect to the plaintiffs' § 1983 conspiracy claims against Gary Motykie, the plaintiff "must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). According to the well-pled allegations, the Inverness police officers agreed to enforce an order of protection and to let Gary Motykie hire a

locksmith to gain access to the Inverness home. As discussed above, there are no plausible allegations that they agreed to inflict a constitutional harm. Without that, there is no conspiracy under § 1983.

The Court does not reach the plaintiffs' state law claims because the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c).

Date: February 2, 2026

JEREMY C. DANIEL
United States District Judge

4